In Re: Application for License to Practice Law
by John W. Daniel

(No. 12945)

Submitted January 27, 1970.      Decided March 17, 1970.

Dissenting Opinion March 30, 1970.

*Herbert H. Henderson,* for petitioner.

*Charles V. Renner, John O. Kizer,* The West Virginia State Bar.

Berry, Judge:

This is a proceeding involving an application of John W. Daniel of Cabell County to obtain a second license to practice law in the State of West Virginia and involves the inherent power of the Supreme Court of Appeals over such matters. The case was submitted for decision of this Court on January 27, 1970, upon arguments and

briefs on behalf of both the applicant and the West Virginia State Bar.

The applicant's license to practice law was revoked and annulled by an order of this Court entered July 14, 1964. The order resulted from a complaint filed in the Supreme Court on May 14, 1964 by the Committee on Legal Ethics of the West Virginia State Bar to which complaint Daniel filed an answer denying the allegations contained in the complaint. The complaint was accompanied by exhibits and transcripts of the hearings held before such Committee with regard to the charges of professional misconduct. Daniel did not appear before the Committee but filed a request with this Court to have the matter referred to a Special Commissioner and for additional hearings, which request was denied, and the findings and conclusions of the Legal Ethics Committee were adopted and his license to practice law annulled. It is not necessary at this time to go into the details of the charges contained in the complaint except to say that they consisted of three instances in which he failed to pay over money collected for his clients and the failure to institute proceedings for which he had received money from his clients so to do.

In the year in which the charges were filed Daniel left Huntington, West Virginia, where he had lived and practiced law, and went to Nashville, Tennessee, where he remained for quite a few years. Later, he returned to Huntington where he had formerly lived.

On March 4, 1969, he filed an application with the Supreme Court of Appeals for reinstatement of his license to practice law in this State. In his petition he admitted that the annulment of his license by this Court was proper, but set up certain statements in mitigation which were in effect that he had repaid all of the monies involved other than $150 for which he could not find the owner, and he tendered this item to the Court. He endeavored to explain the reasons for the difficulty which resulted in his resigning from the Bench of the Common

Pleas Court of Cabell County in 1958 and resuming the practice of law which he later gave up in 1962 and left the State.

He further stated that he was rehabilitated, and attached to his petition several letters from prominent members of the profession in Huntington recommending his reinstatement.

The Committee on Legal Ethics of the West Virginia State Bar filed a report with this Court on June 12, 1969, in accordance with the by-laws of the West Virginia State Bar in which it took the position that inasmuch as his license had been annulled it was forever terminated and it could not be reinstated. Its position was based on Article VI, Part H, Section 31 of the by-laws of the West Virginia State Bar which was approved by this Court and which provides as follows: "The annulment of a license to practice law by any court of competent jurisdiction shall revoke and forever terminate such license, and shall constitute a disbarment." However, in the report the Committee made the following statement to the Court. "This Committee further submits that as the result of his disbarment the Petitioner has the same status with respect to the practice of law as if no license had ever been issued to him and may obtain a license to practice law only by compliance with the Rules Relating to Admission to the Bar adopted by this Court." The report concluded with a statement that Daniel's petition failed to state a claim upon which relief could be granted. This Court then refused without prejudice the application for reinstatement on June 16, 1969.

On November 12, 1969, the present application for a new license to practice law in this State was filed in this Court by Daniel, in accordance with the statement contained in the report of the Committee on Legal Ethics of the West Virginia State Bar to this Court in connection with his application for reinstatement of his license to practice law. Attached to this application was an order of the Circuit Court of Cabell County reciting that the

Committee on Admissions to Practice Law had been duly appointed by that Court to investigate the qualifications of the applicant to obtain a license to practice law and that the applicant is a person of good moral character, over twenty-one years of age, and had resided in such county for one year next preceding the date of his appearance before the court, all in accordance with the provisions of Code, 30-2-1. This order was entered on October 31, 1969.

Two hearings were held in connection with this matter. After the first hearing on November 25, 1969, this Court was of the opinion that the matter should be further developed and a final hearing was held on January 27, 1970.

It is the contention of the applicant that he has complied with all of the requirements with regard to the obtaining of a new license to practice law as contained in Code, 30-2-1, dealing with such matter; that another license should be granted to him because the State Bar does not deny the allegations that said requirements have been complied with as stated in the order of Cabell County or does not contest the finding of the good moral character of the applicant by such Court.

In response to this effort of Daniel to have himself treated as a new applicant, the State Bar now takes the position that Section 31, Part H, Article VI of the by-laws of the West Virginia State Bar prohibits him from applying for another license to practice law and that Code, 30-2-1 does not apply to a person who has once obtained a license which has later been annulled. The present view of the State Bar is thus contra to the suggestion it made when the matter was before the Court on an attempted reinstatement.

The Supreme Court of Appeals has the inherent power to supervise, regulate and control the practice of law in this State, which includes the inherent power to grant or refuse to grant the license to practice law, *In Re Eary,*

134 W. Va. 204, 58 S. E.2d 647; *West Virginia State Bar* v. *Earley,* 144 W. Va. 504, 109 S. E.2d 420, and both parties agree as to this power.

The only question involved in this proceeding is whether this Court after having once revoked and annulled a license heretofore granted to practice law can grant another one after it had promulgated and adopted Section 31, Part H, Article VI of the by-laws of the West Virginia State Bar dealing with annulment of license to practice law. There is no question but that this Court has the inherent power to promulgate and adopt such rules and to change such rules if it sees fit and proper to do so. *Re Application of J. T. Daniel,* (Okla.) 315 P.2d 789, 70 A.L.R.2d 265; *In Re Nevius,* 174 Ohio State 560, 191 N. E.2d 166.

It is true that if a license to practice law has been annulled it can not be reinstated because such license is gone. It has been so held by this Court. *Ex Parte Mitchell,* 123 W. Va. 283, 14 S. E.2d 771. The adoption of Section 31, Part H, Article VI did not in any manner change the law in this State with regard to the annulment of license to practice law. The above rule adopted by this Court merely states that an annulment of a license to practice law *shall revoke and forever terminate such license.* The wording of this rule specifically refers to such license and not to another or new license.

On June 14, 1948, upon the application for a new license to practice law by one Jackson B. Blair, who had heretofore had his license to practice law annulled because of a conviction in a Federal District Court of West Virginia, a new license was granted, he having shown to the Supreme Court that he had been rehabilitated, pardoned by the President of the United States, was of good moral character and had the requisites of age and residency required by Code, 30-2-1. In the case of *In Re Eary, supra,* decided by this Court in 1950, it was clearly indicated that in such cases a new license could be granted, if the Court saw fit to do so, wherein it was stated that: "The

petitioner stands on this petition as if he were making an original application for a license to practice law." The license of the applicant in that case had been annulled and in the proceeding which was apparently considered on application for a new license it was found by the Court that he had not proved he was of good moral character and the application for a new license was denied. In the case at bar there is no denial by the State Bar that the applicant has been rehabilitated and is of good moral character as indicated by the order of the Circuit Court of Cabell County dated October 31, 1969.

It is generally held in such matters as involved in the instant case that disbarment or annulment is not final or permanent as far as obtaining a new license to practice law, but the burden of showing good moral character at the time the application may be made is upon the applicant. 7 Am. Jur. 2d, Attorneys at Law, Sections 70 and 72; 7 C.J.S., Attorney and Client, Section 41. Disbarment of an attorney to practice law is not used solely to punish the attorney but is for the protection of the public and the profession. *In Re Keenan*, 310 Mass. 166, 37 N. E.2d 516, 137 A.L.R. 766. Although an annulment forever terminates the license held by the attorney at the time it was annulled, it does not prohibit the application by such an attorney for a new license to practice law as if he had never been issued a license. *In Re Keenan, supra; Cantor v. Grievance Committees,* 189 Tenn. 536, 226 S. W.2d 283; *Re Stephenson*, 243 Ala. 342, 10 So. 2d 1, 143 A.L.R. 166.

The reason for the disposition of such cases is clearly stated in the case of *In Re Keenan, supra,* wherein the Supreme Judicial Court of Massachusetts held that a final judgment removing a person from the office of attorney at law does not preclude him from subsequently applying for admission to the bar if the offense was such that he can satisfy the court after a lapse of time that he has become trustworthy. However, in such case where a second application is made for a license to practice law the court under the inherent power may impose

certain conditions before a new license will be given to the applicant. 70 A.L.R.2d, Anno., Reinstatement of Attorney, §40.

It appears that the applicant has met the requirements to be granted a new license to practice law in this State. He has met the burden of showing good moral character since his return to Huntington, Cabell County, West Virginia, as well as the other requirements, all of which is not denied by the State Bar. Therefore, for the reasons stated herein the majority of this Court would grant the applicant a new license to practice law without any conditions.

The writer of this opinion, although voting to grant the applicant a new license to practice law, would impose the condition that the matter be first referred to the West Virginia Board of Law Examiners for an investigation to be made of the applicant's conduct during the period of years he spent in Nashville, Tennessee, and if such examination proved favorable the writer would then approve the application.

> *Application for a license to practice law granted.*

BROWNING, PRESIDENT, dissenting:

It is with deference that I find myself in such disagreement with the majority that it is necessary to state the reasons therefor in a formal opinion. I believe that the majority has overlooked the fact that this Court in the exercise of its inherent power has created an integrated West Virginia State Bar, requiring all who practice law in this State to be members thereof, and has laid down firm rules with regard to the admission to practice and the determination of the right to practice law in this State. Therefore, I believe that any previous decisions of this Court, such as in the application of Jackson V. Blair, Jr., Order Book 57, Page 151 (June 14, 1948), in which this Court, without a written opinion, did grant Blair a license to practice law after his initial license had been

revoked, are inapplicable. Furthermore, it is my opinion that Code, 30-2-1, has no application whatever to the controlling issue in this case.

The language of Article VI, Part H, § 31, of the By-Laws of the West Virginia State Bar is clear and unambiguous in providing that, "The annulment of a license to practice law by any court of competent jurisdiction shall revoke and forever terminate such license, and shall constitute a disbarment." The majority has found that the language "such license" refers only to the initial license granted to the attorney and that he may apply for a new license at any time after the original has been revoked. I cannot accept this appraisal of that language. The words "forever terminate" and "disbarment" mean more than a routine revoking of a license without prejudice. In my opinion, they mean an irrevocable termination of the right to practice law in this State by the person whose license was revoked and annulled. If the language of that rule is ambiguous then § 24 must be read with it to ascertain its meaning. That section provides only for the "suspension" of a license to practice law upon conviction of a crime not involving moral turpitude or professional unfitness, and when a court has suspended the license of an attorney, the way back to full restitution of his right to practice law is a difficult one. When the period of suspension has ended, he must apply for permission to practice again, and when that is done, this Court refers the petition to the Committee on Legal Ethics of the State Bar for a full investigation and a determination of whether he has complied with the conditions imposed upon him when he was suspended and a recommendation with regard to disposition. There is no such provision in § 31 concerning the situation presented herein for the simple reason, in my opinion, that the rule did not contemplate any subsequent application by an attorney whose license had been revoked and forever terminated. Although the majority states that with which we are all in agreement, i.e., the inherent power of this Court to regulate the practice of the law, it has found it necessary to turn to an ancient

statute, Code, 30-2-1, which has been a part of the law of this State since 1863 and was last amended in 1923, to find that an attorney whose license has been revoked may by the simple procedure of complying with that statute secure a new license to practice law. There is no explanation as to why this Court would impose a much more severe penalty upon an attorney whose license was merely suspended than upon one who was disbarred and his license forever terminated.

It is evident from a casual reading of Code, 30-2-1, that its provisions do not relate to an application for a license to practice law by an attorney whose first license had in a proper proceeding been revoked. It is clear that its provisions are applicable only to a graduate of a college of law who seeks for the first time to be admitted to the practice of law. The first step is to appear before the circuit court of the county in which the applicant has resided for at least a year and prove to the satisfaction of that court that he is twenty-one years of age and of good moral character. Upon receipt of a certified copy of the order of the circuit court to that effect by the Supreme Court of Appeals, the applicant, if a graduate of other than the West Virginia University College of Law, may apply to the Board of Law Examiners, appointed by this Court, for the purpose of taking an examination to ascertain whether he is qualified to practice law in the courts of this State, and if he successfully passes the examination, he is issued a license to practice law by this Court. A graduate of the West Virginia University College of Law need only produce a copy of the circuit court order and his diploma in order to be entitled to practice law in this State. The majority required of this applicant only that he comply with the first requirement, *i.e.*, submit the certificate of the circuit court of the county of which he is a resident, and did not refer the matter to the Committee on Legal Ethics of the West Virginia State Bar for further action of any kind. It is my opinion that this Court has, in effect, amended Article VI, Part H, § 31, of the By-Laws of the State

Bar, a power delegated to the State Bar by virtue of the language contained in Article X, §§ 1 and 2 of the By-Laws:

### § 1. AMENDMENTS AT ANNUAL MEETING.

Subject to the approval of the supreme court of appeals, these by-laws may be altered or amended at any annual meeting on recommendation of the board by vote of a majority of the members present or, without such recommendation, by vote of two thirds of the members present.

### § 2. AMENDMENTS BY MAIL VOTE.

The board may at any time submit to the members of the State bar, by mail, proposed alterations or amendments to the constitution and to the by-laws of the State bar, and such alterations or amendments shall become effective when approved by a majority of the members voting and by the supreme court of appeals.

In summary, Code, 30-2-1, has no application to the issue before the Court in this case. It does not provide for the granting of a second license to an attorney whose first license has been "forever terminated." If the Legislature had passed such an act this Court would strike it down as an invasion of the "inherent" power of the judicial branch of the government and as violative of Article 5, § 1, of the Constitution of this State, the separation of powers provision of that document. Article VI, Part H, § 31, of the By-Laws of the West Virginia State Bar contains no language that could possibly be interpreted as authorizing the granting of a second license to an attorney whose original license had been annulled. This Court in the exercise of its inherent power approved that rule. This rule can be changed only in the manner provided in Article X, §§ 1 and 2 of those By-Laws which sections were approved by this Court. I would deny the application of the petitioner for a second license to practice law in this State for the reasons stated herein.

I am authorized to say that Judge Calhoun concurs in the views expressed in this dissent.