639 S.E.2d 882

**LAWYER DISCIPLINARY BOARD, Petitioner,**

v.

**Leonard S. COLEMAN, a Member of the West Virginia State Bar, Respondent.**

**No. 32861.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 14, 2006.

Decided Nov. 30, 2006.

Rachael L. Fletcher, Lawyer Disciplinary Counsel, Office of Disciplinary Counsel, Charleston, for the Petitioner.

Sherri D. Goodman, Charleston, for the Respondent.

PER CURIAM:

The respondent herein, Leonard S. Coleman (hereinafter "Mr. Coleman"), presents his objections to a July 14, 2006, recommendation of the Hearing Panel Subcommittee of the Lawyer Disciplinary Board to annul his license to practice law in the State of West Virginia. In summary, the Panel found that Mr. Coleman's conversion of approximately $170,000.00 in legal fees paid by clients to Mr. Coleman's former law firm violated Rule 1.15 and Rule 8.4 of the West Virginia Rules of Professional Conduct and warranted, among other sanctions, disbarment. Before this Court, Mr. Coleman argues that his misconduct did not constitute a violation of Rule 1.15 and that annulment of his law license is too severe a sanction for his actions. Upon a review of the parties' arguments, the record of the proceedings below, and the pertinent authorities, we reject Mr. Coleman's arguments and agree with the Panel's recommendations that Mr. Coleman's law license should be annulled; that he should be required to make full restitution, plus interest, to his former law firm; and that he should be required to reimburse the Lawyer Disciplinary Board for the costs of these proceedings.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Coleman was admitted to the West Virginia State Bar on September 15, 1981, and was employed by the law firm of Goodwin & Goodwin, L.L.P., from 1981 until May 20, 2005.[1] Beginning in approximately 1985, Mr. Coleman has practiced exclusively in the field of bond work.

At issue in this lawyer disciplinary proceeding are numerous instances of misconduct, all of which involve Mr. Coleman's diversion of clients' payments for bond work performed by the firm.[2] During the times relevant herein, Goodwin & Goodwin submitted invoices to its clients for bond work it had performed. To facilitate clients' payments for these services by wire transfer,[3] the law firm's bank account information was included on these invoices. The misconduct giving rise to the present proceeding began in September 2004, when Mr. Coleman substituted his personal bank account information for that of Goodwin & Goodwin on an invoice submitted to a client for bond work pertaining to a Marshall County housing project. As a result of the substituted bank account information, the client's wire transfer of the firm's fee for this work in the amount of $35,000.00 was deposited into Mr. Coleman's personal bank account instead of into the firm's bank account. Thereafter, Mr. Coleman spent these monies for his personal benefit. Goodwin & Goodwin was not aware of either the erroneous transfer or Mr. Coleman's use of such funds.

---

1. Mr. Coleman became a partner in the law firm in 1986.

2. During oral argument, the parties represented that this bond work was performed both by Mr. Coleman and by other attorneys in the law firm.

3. Although most bond clients paid for such work via wire transfer, local clients also paid for these services by check.

Mr. Coleman again diverted and converted clients' payments for bond work performed by the firm into his personal bank account for his personal use in November 2004 for work performed on a combined pool housing project in the amount of $35,000.00; in December 2004 for work performed on a five county/multi county housing project in the amount of $35,000.00; in January 2005 for work performed on a medical office facilities bonds project in the amount of $15,000.00; in March 2005 for work performed on a Stonewall Jackson Lake State Park project in the amount of $10,740.00; and in May 2005 for work performed on a Water Development Authority project in the amount of $40,000.00.

On about May 20, 2005, one of the attorneys of Goodwin & Goodwin discovered Mr. Coleman's diversion and conversion of the above-described clients' payments, which totaled $170,740.00. Mr. Coleman was asked to tender his immediate resignation and a letter detailing his misconduct. Mr. Coleman's letter describing his actions was dated May 24, 2005, and included the six aforementioned transactions; however, his letter did not reference a seventh transaction from May 20, 2005, in which Mr. Coleman had attempted to divert a client's payment for bond work performed on a University Bonds project in the amount of $37,500.00. Nevertheless, the law firm discovered the May 20, 2005, pending transaction and prevented the funds from being transferred to Mr. Coleman's personal bank account.

On August 27, 2005, the Investigative Panel of the Lawyer Disciplinary Board issued the Statement of Charges forming the basis of this disciplinary proceeding, which charges were filed with this Court on October 4, 2005. In summary, Mr. Coleman was charged with six counts of misconduct, one count for each of the instances of diversion and conversion that occurred between September 2004 and May 2005.[4] Count 1 of the Statement of Charges asserts that

[i]n or about September 2004, Respondent [Mr. Coleman] knowingly, intentionally and wrongfully placed his own personal bank account information on an invoice to Goodwin & Goodwin's client for bond work pertaining to a Marshall County Housing project. As a result, the firm's fee in the amount of Thirty–Five Thousand Dollars ($35,000.00) was wire transferred into Respondent's personal bank account, and spent by Respondent for his own personal benefit, all without the knowledge or consent of the other members of Goodwin & Goodwin.

Because he wrongfully placed his own personal bank account information on the invoice to Goodwin & Goodwin's client, causing the Thirty–Five Thousand Dollars ($35,000.00) to be wired to his own personal bank account, failed to advise Goodwin & Goodwin of its receipt, failed to promptly deliver the fee to the firm, and failed to keep the fee separate from his own personal property, but co-mingled the Thirty–Five Thousand Dollars ($35,000.00) with his own personal property and converted the same to his own personal use, Respondent violated Rules 1.15(a), (b), (c) and Rule 8.4(c) of the West Virginia Rules of Professional Conduct which provide as follows in pertinent part:

**Rule 1.15. Safekeeping property.**

(a) A lawyer shall hold property of . . . third persons that is in a lawyer's possession in connection with a representation separate from the lawyers [sic] own property. . . .

(b) Upon receiving funds or other property in which a . . . third person has an interest, a lawyer shall promptly notify the . . . third party . . . .

(c) When in the course of representation a lawyer is in possession of property in which both the layer [sic] and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.

---

**4.** The May 20, 2005, pending transaction was not included as an official count in the Statement of Charges presumably because it was not completed, and, thus, Mr. Coleman did not receive or spend the monies involved therein. Moreover, Mr. Coleman has not been charged criminally for his actions.

**Rule 8.4. Misconduct.**

It is professional misconduct for a lawyer to:

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

The remaining five counts are identical to Count 1 with the exception of the project referenced, the fee amount involved therein, and the omission of the quotations of supporting authority. A statement of "Aggravating Factors" was also set forth in the Statement of Charges:

> Respondent's actions as alleged herein arose as the result of a dishonest or selfish motive, constituted a pattern of misconduct or multiple offenses continuing for a seven (7)[sic] month period until discovered by another member of Goodwin & Goodwin and totaling One Hundred Seventy Thousand Seven Hundred Forty Dollars ($170,-740.00), and constituted illegal conduct on the part of Respondent.

Thereafter, the Hearing Panel Subcommittee of the Lawyer Disciplinary Board (hereinafter "the Panel") held a hearing in this matter on March 24, 2006. During these proceedings, it was revealed that Mr. Coleman had engaged in similar misconduct in 1993–94 by misappropriating clients' fees payments. Upon discovery of that misconduct, Mr. Coleman's law firm decided to forgive him, and he made full restitution of the unspecified [5] amount he had converted.

The Panel issued its report on July 14, 2006, finding, in summary, that Mr. Coleman's most recent misconduct constituted a "more sophisticated fraudulent scheme" than his earlier, unreported transgressions and the amount of money involved herein "is staggering". Further, the Panel concluded that, given the less severe sanctions imposed in previous cases involving misconduct similar to that perpetrated by Mr. Coleman, *see Lawyer Disciplinary Board v. Ford,* 211 W.Va. 228, 564 S.E.2d 438 (2002) (per curiam) (admonishing lawyer who converted $22,450.00 of law firm's money to his own use and who made full restitution within 60 days of discovery of wrongdoing); *Committee on*

*Legal Ethics v. Hess,* 186 W.Va. 514, 413 S.E.2d 169 (1991) (suspending attorney for conversion of $16,759.97 from client settlement account and $6,189.25 of interest earned by said account), "[t]here is no reason to believe that any sanction less than Respondent being stripped of his law license by annulment would deter Respondent from engaging in similar morally reprehensible, nefarious conduct." The Panel then recommend[ed] the following sanctions:

1. That Respondent's law license be annulled. The Subcommittee finds that annulment is the only appropriate sanction for such a gross pattern of misconduct that Respondent has exhibited;

2. That Respondent be ordered to reimburse the firm of Goodwin & Goodwin in the amount of $167,000.00, at a rate of 10% interest per annum; and

3. That Respondent be ordered to reimburse the Lawyer Disciplinary Board the costs of these proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

(Emphasis in original). Following this ruling, Mr. Coleman filed his objections to the Panel's recommended discipline, which objections were accepted by this Court for further consideration in the instant proceeding.

## II.

### STANDARD OF REVIEW

The case *sub judice* involves a lawyer disciplinary proceeding over which this Court maintains plenary review, but to which we accord deference regarding factual assessments.

> A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own

---

5. Neither Mr. Coleman nor his former law firm could recall the precise amount of money involved in the 1993–94 misappropriation scheme. Mr. Coleman remembered the amount of clients' fees he had converted to his own use to be approximately $30,000.00 or $40,000.00, while his former law firm believed the amount Mr. Coleman had misappropriated was in the neighborhood of $70,000.00.

independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

Syl. pt. 3, *Committee on Legal Ethics of the West Virginia State Bar v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994). *Accord* Syl. pt. 3, in part, *In re Brown*, 166 W.Va. 226, 273 S.E.2d 567 (1980) ("Absent a showing of some mistake of law or arbitrary assessment of the facts, recommendations made by the State Bar Legal Ethics Committee . . . are to be given substantial consideration."). With respect to the sanctions that are appropriate in a given case, however, "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syl. pt. 3, *Committee on Legal Ethics of the West Virginia State Bar v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984). Mindful of these standards, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

■ Before this Court, the parties to this disciplinary proceeding do not dispute the essential facts found by the Panel in rendering its recommendation in this matter. Neither do they disagree that Mr. Coleman's conduct violated Rule 8.4(c) of the West Virginia Rules of Professional Conduct. Mr. Coleman objects, however, to the Panel's finding that his actions violated Rule 1.15 of the West Virginia Rules of Professional Conduct because, he claims, Rule 1.15 governs a lawyer's actions vis-a-vis his/her clients, and not with respect to his/her law firm or the members thereof. Additionally, Mr. Coleman contends that the Panel's recommendation to annul his law license is too harsh a sanction for his misconduct. By contrast, the Lawyer Disciplinary Board urges this Court to adopt the Panel's recommendations in their entirety.

In bringing its Statement of Charges against Mr. Coleman, the Investigative Panel asserted that Mr. Coleman's six instances of misappropriating fees paid by clients to his former law firm for bond work performed violated two provisions of the West Virginia Rules of Professional Conduct: Rule 1.15(a,b,c) and Rule 8.4(c). In his Verified Answer to the Statement of Charges, Mr. Coleman "acknowledge[d] that he violated Rule 8.4(c) of the West Virginia Rules of Professional Conduct." We appreciate Mr. Coleman's candor and likewise conclude that Mr. Coleman's actions violated Rule 8.4(c). As such, we find Rule 8.4(c) to be dispositive of this matter.[6]

Rule 8.4(c) of the West Virginia Rules of Professional Conduct directs that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation." In summarizing its determination that Mr. Coleman's actions violated the West Virginia Rules of Professional Conduct, the Panel concluded that

Respondent [Mr. Coleman] violated his oath that he would honestly demean himself in the practice of law. W. Va.Code § 30–2–3. He took money without the knowledge or authorization of his partners, money which clearly was not his, and converted it to his own use. He violated his fiduciary obligation of good faith and fair dealing with his partners. His conduct was reprehensible, dishonest and deceitful. He not only jeopardized the reputation of his law firm, he jeopardized the public's perception of the legal system.

Upon the record presented for our consideration, the parties' arguments, the recommendation of the Lawyer Disciplinary Board, and Mr. Coleman's own admission, we conclude that Mr. Coleman violated Rule 8.4 of the West Virginia Rules of Professional Conduct when he, on six different occasions, diverted clients' payments into his own bank account and converted those funds for his own use. Such misconduct "involv[ed] dishonesty, fraud, deceit [and] misrepresenta-

**6.** Accordingly, we decline to consider whether Mr. Coleman's actions also violated the various provisions of Rule 1.15 insofar as such a determi- nation is not necessary to our decision of this case.

tion" with respect to his dealings with his clients and his law firm and its members. *See* Rule 8.4(c). It goes without saying that, in misappropriating some $170,740.00 in fee payments, over the course of approximately nine months, from six different clients, Mr. Coleman dishonestly misrepresented the bank account information set forth on his clients' invoices, mislead clients as to the destination for such payments, and fraudulently and deceitfully acquired and consumed such monies for his own personal benefit to the exclusion and detriment of his law firm. What remains to be determined, however, is the discipline warranted by such a flagrant disregard for the ethical duties by which Mr. Coleman, as an attorney-at-law, was required to abide.

 With respect to the sanctions that should be imposed in a particular lawyer disciplinary proceeding, we have recognized that

> Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or the Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syl. pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998). Because of the fact-specific nature of disciplinary proceedings, we also appreciate that there is no rigid standard of discipline that is appropriate in all cases. For this reason, we have held that

> [i]n disciplinary proceedings, this Court, rather than endeavoring to establish a uniform standard of disciplinary action, will consider the facts and circumstances in each case, including mitigating facts and circumstances, in determining what disciplinary action, if any, is appropriate[.]

Syl. pt. 2, in part, *Committee on Legal Ethics of the West Virginia State Bar v. Mullins*, 159 W.Va. 647, 226 S.E.2d 427 (1976), *overruled on other grounds by Committee on Legal Ethics of The West Virginia State Bar v. Cometti*, 189 W.Va. 262, 430 S.E.2d 320 (1993).

 With specific respect to the subject matter of the instant proceeding, however, we do not take lightly those disciplinary cases in which a lawyer's misconduct involves the misappropriation of money. In such instances, we have resolutely held that, unless the attorney facing discipline can demonstrate otherwise, disbarment is the only sanction befitting of such grievous misconduct.

Although Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates the factors to be considered in imposing sanctions after a finding of lawyer misconduct, a decision on discipline is in all cases ultimately one for the West Virginia Supreme Court of Appeals. *This Court, like most courts, proceeds from the general rule that, absent compelling extenuating circumstances, misappropriation or conversion by a lawyer of funds entrusted to his/her care warrants disbarment.*

Syl. pt. 5, *Office of Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (emphasis added). *See also Lawyer Disciplinary Bd. v. Kupec*, 202 W.Va. 556, 571, 505 S.E.2d 619, 634 (1998) (" 'Misappropriation of funds by an attorney involves moral turpitude; it is an act infected with deceit and dishonesty and will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction.' " (quoting *Committee on Legal Ethics of the West Virginia State Bar v. Hess*, 186 W.Va. 514, 517, 413 S.E.2d 169, 172 (1991) (additional quotations and citation omitted))).

Before this Court, Mr. Coleman points to numerous factors in mitigation of the sanctions that should be imposed for his misconduct. In opposition to Mr. Coleman's suggestion that mitigating circumstances exist to lessen the severity of his actions, the Lawyer Disciplinary Board asserts that, instead, there exist many aggravating circumstances to justify the annulment of Mr. Coleman's license to practice law. In determining whether "compelling extenuating circum-

stances" exist to lessen the sanctions to be imposed for Mr. Coleman's aforementioned conversion of clients' fee payments, we will briefly consider both the mitigating and aggravating factors as urged by the parties. *See* Syl. pt. 5, in part, *Office of Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722.

Mr. Coleman suggests that the circumstances of this case do not justify the annulment of his law license because several mitigating factors are present to lessen the severity of his conduct and the punishment that should be imposed as a result thereof. We previously have held that "[m]itigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. pt. 2, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003). Moreover,

> [m]itigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

Syl. pt. 3, *id.* In this regard, Mr. Coleman argues that he has never before been the subject of a lawyer disciplinary proceeding in his nearly twenty-five years of practice; his actions were precipitated by his substantial personal and emotional problems; he has promptly made a good faith effort at restitution; and he has made a full and free disclosure of his misconduct and has not attempted to conceal his actions.

While we appreciate Mr. Coleman's efforts to reduce the severity of his actions by citing the aforementioned factors in mitigation thereof, we do not believe that any of these factors, either individually or in their entirety, lessen the blatant disregard for the ethical obligations of his profession demonstrated by Mr. Coleman or the punishment that is warranted by his misconduct. First, we are not persuaded by Mr. Coleman's contention that he never before has been professionally disciplined insofar as the pattern of misappropriations which form the basis of the instant disciplinary proceeding is not an isolated occurrence. Rather, in 1993–94, Mr. Coleman converted another substantial sum of clients' fee payments, unbeknownst to his law firm until he had misappropriated between $30,000.00 and $70,000.00.[7] At that time, his law firm graciously forgave him upon his remorse and restitution. He was not subject to discipline only because his law firm did not report his misconduct. It can hardly be said, then, that Mr. Coleman had a clean slate before the present disciplinary action was brought against him.

Neither are we persuaded by Mr. Coleman's argument that his personal and emotional problems have contributed to his misconduct. Rather than seeking professional assistance following the first incidences of misappropriation some ten years previous, Mr. Coleman continued, unsuccessfully, to deal with his personal affairs on his own. Admittedly knowing that the diversion and conversion of client payments was wrong, Mr. Coleman nevertheless commenced misappropriating again until his misconduct was discovered.

Moreover, while Mr. Coleman claims to have undertaken a "timely good faith effort to make restitution," Syl. pt. 3, in part, *Scott*, 213 W.Va. 209, 579 S.E.2d 550, we are not convinced that he has done all that is within his power to repay his former law firm. Understandably, Mr. Coleman's resources have been severely limited by his disassociation from his former law firm and unstable employment situation. Nevertheless, Mr. Coleman's restitution consists of one single payment of $3,000.00 in July 2005. Although Mr. Coleman originally had promised to repay his former law firm on a monthly basis, he has not attempted to make additional

---

7. *See supra* note 5.

payments, of any amount, at any time, since the isolated repayment. Even a monthly payment of $10 or $20 would demonstrate a good faith effort at making restitution in spite of limited financial resources and would definitely prove that Mr. Coleman was remorseful for his actions.

Finally, we are deeply troubled by Mr. Coleman's suggestion that he has made a "full and free disclosure" and has not "attempt[ed] to conceal his conduct." When Mr. Coleman's misappropriations were discovered, he failed to disclose the final, pending transaction on which he had substituted his bank account information for that of his law firm. Although he claims that he believed the law firm would receive these funds because he would not be involved in the closing of that client's bond transaction, the reason for his failure to disclose this information is irrelevant. At that time, Mr. Coleman should have alerted the firm that, in addition to the other six instances of misappropriation it had discovered, a seventh was also pending. Particularly given the graciousness the law firm had extended to Mr. Coleman when it discovered his prior misappropriation scheme in 1994, he at least owed his fellow partners "a full and free disclosure" of his most recent pattern of misconduct.

 Instead of presenting factors in mitigation, the Lawyer Disciplinary Board contends that several aggravating factors exist to justify the sanction of disbarment it recommends in this case. "Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. pt. 4, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550. To support its position, the Lawyer Disciplinary Board cites several aggravating factors that it believes should be considered to enhance Mr. Coleman's punishment: the selfish and dishonest motive he displayed in committing the misappropriations; his substantial experience of nearly twenty-five years in the practice of law; his pattern of misconduct insofar as he had committed similar acts of diversion and conversion in 1993–94; and the fact that the current misconduct involved multiple offenses.

We agree with the Lawyer Disciplinary Board that there exist several aggravating factors that justify imposing stringent sanctions upon Mr. Coleman for his misconduct. As we previously have discussed in the context of Mr. Coleman's purported mitigating factors, the transactions which form the basis of these disciplinary proceedings were not the first time Mr. Coleman had misappropriated clients' fee payments from his law firm and converted said monies for his own personal use. On each occasion of his diversion and conversion scheme, Mr. Coleman expressed utter disregard for the well-being of his law firm, as well as the sanctity of the legal profession, in order to secure funds for himself. The fact that he has been practicing law for twenty-five years and has apparently, in all other respects, been an upstanding member of the legal community makes his transgressions that much more heinous in that, frankly, he should have known better.

In addition to the aggravating factors relied upon by the Lawyer Disciplinary Board, we find there exist still other aggravating circumstances to support the imposition of strict sanctions in this case: the amount of money involved, the illegality of Mr. Coleman's misconduct, and his blatant disregard for his obligations to his former law firm. First, the sum of money involved in this case is, as described by the Panel, "staggering". Over the course of nine months, Mr. Coleman managed to secret away approximately $170,740.00 in payments clients had made for legal services they had received. It is small consolation that, as Mr. Coleman stated in his brief before this Court, "[t]here were other bond transactions during this time period from which he did not divert funds." Moreover, misappropriation of this magnitude potentially implicates numerous criminal statutes. *See, e.g.*, W. Va.Code § 61–3–22 (1923) (Repl.Vol.2000) (falsifying accounts); W. Va.Code § 61–3–24 (1994) (Repl.Vol.2000) (obtaining money by false pretenses); W. Va.Code § 61–3–24d (1995) (Repl.Vol.2000) (fraudulent schemes); W. Va.Code § 61–3–54 (1998) (Repl.Vol.2000) (taking identity of another person). The fact that Mr. Coleman has not been charged criminally[8] for his

---

8. *See* note 4, *supra*.

actions does not lessen their severity or the ramifications thereof.

 Last, but certainly not least, is the blatant disregard Mr. Coleman has expressed for his law firm. Not only should he have been extraordinarily utterly grateful that his fellow partners gave him a second chance to be an upstanding member of the legal community when his first round of misappropriations was discovered in 1994, but Mr. Coleman also owed a fiduciary duty to the firm, itself, which duty was breached by his subsequent scheme of diverting and converting clients' payments in 2004–05. We previously have held that "[i]f a lawyer converts firm monies to his or her own use without authorization, the attorney is subject to a disciplinary charge. Such conduct obviously reflects a dishonest and deceitful nature which violates the general precept that an attorney should avoid dishonesty or deceitful conduct." Syl. pt. 3, in part, *Committee on Legal Ethics of the West Virginia State Bar v. Hess*, 186 W.Va. 514, 413 S.E.2d 169 (1991). *See also* Syl. pt. 2, in part, *id.* (" 'The utmost good faith and fair dealing must be exercised toward each other by ... partners[.]' Syllabus Point 1, in part, *Zogg v. Hedges*, 126 W.Va. 523, 29 S.E.2d 871 (1944)."). Having utter disregard for his law firm's prior benevolence as well as his own duty to deal fairly and honestly with the members of his firm suggests that Mr. Coleman does not fully understand or appreciate the wrongfulness of his actions.

Upon rendering its ruling, the Panel recommended that Mr. Coleman be subjected to the following discipline:

1. That Respondent's law license be annulled. The Subcommittee finds that annulment is the **only** appropriate sanction for such a gross pattern of misconduct that Respondent has exhibited;

2. That Respondent be ordered to reimburse the firm of Goodwin & Goodwin in the amount of $167,000.00, at a rate of 10% interest per annum; and

3. That Respondent be ordered to reimburse the Lawyer Disciplinary Board the costs of these proceedings pursuant to

Rule 3.15 of the Rules of Lawyer Disciplinary Procedure.

(Emphasis in original).

 The imposition of sanctions in a lawyer disciplinary proceeding is a serious matter.

In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syl. pt. 3, *Committee on Legal Ethics of the West Virginia State Bar v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987). Accordingly, the decision to annul an attorney's license to practice law in this State is not one we make lightly; disbarment is a sanction reserved for only the most egregious of disciplinary proceedings. The instant matter is one such case. "Disbarment of an attorney to practice law is not used solely to punish the attorney but is for the protection of the public and the profession." Syl. pt. 2, *In re Daniel*, 153 W.Va. 839, 173 S.E.2d 153 (1970).

Upon the facts and circumstances of this case, we find disbarment to be the only sanction suitable to punish Mr. Coleman for his wrongdoing. Obviously, since this is his second misappropriation scheme, Mr. Coleman was not deterred by either the shame and embarrassment he surely must have felt upon his former law firm's discovery of his first round of transgressions in 1994 or by his requirement to repay the firm the sums he had then misappropriated. Moreover, as we previously have held, "absent compelling extenuating circumstances, misappropriation or conversion by a lawyer of funds entrusted to his/her care warrants disbarment." Syl. pt. 5, in part, *Office of Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722. Finding no "compelling extenuating circumstances" in this case, we are left with the conclusion that the only appropriate punishment is to annul Mr. Coleman's license to practice law in this State.

## IV.

## CONCLUSION

For the foregoing reasons, we adopt the recommendation of discipline tendered by the Hearing Panel Subcommittee of the Lawyer Disciplinary Board. Accordingly, we hereby impose the following sanctions upon Mr. Leonard S. Coleman: (1) the law license of Mr. Leonard S. Coleman to practice law in the State of West Virginia is annulled; (2) Mr. Leonard S. Coleman is ordered to make restitution to his former law firm of Goodwin & Goodwin in the amount of $170,740.00, less any payments he previously has made in this regard, at a rate of 10% interest per annum; and (3) Mr. Leonard S. Coleman is ordered to reimburse the Lawyer Disciplinary Board for the costs of these proceedings pursuant to Rule 3.15 of the West Virginia Rules of Lawyer Disciplinary Procedure.

License Annulled.