700 S.E.2d 800

**LAWYER DISCIPLINARY BOARD, Complainant,**

v.

**Nathan H. WASSER, a Member of the West Virginia State Bar, Respondent.**

**No. 34742.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 8, 2010.

Decided Sept. 16, 2010.

**350**

Andrea J. Hinerman, Esq., Senior Lawyer Disciplinary Counsel, Charleston, WV, for Complainant.

Sherri D. Goodman, Esq., Goodman Advocacy, Charleston, WV, for Respondent.

PER CURIAM:

This is a reciprocal lawyer disciplinary action against Nathan H. Wasser (Mr. Wasser) pursuant to Rule 3.20 of the *West Virginia Rules of Lawyer Disciplinary Procedure.*[1]

Mr. Wasser was admitted to the West Virginia Bar on October 31, 2000, and is therefore subject to the disciplinary jurisdiction of this Court.

## I. Background

On November 14, 2008, Mr. Wasser's longtime personal assistant (Ms. Yates) notified the Maryland Attorney Grievance Commission that Mr. Wasser had been using client funds to pay for his personal and business obligations.[2] Following an investigation, the Court of Appeals of Maryland charged Mr. Wasser with having violated the following Rules of Professional Conduct: Rule 1.15, safekeeping property; Rule 8.4(b), committing a criminal act reflecting adversely on honesty, trustworthiness, or fitness as a law-

---

**1.** West Virginia Rules of Lawyer Disciplinary Procedure, Rule 3.20 [January 1, 1995] states as follows:

(a) A final adjudication in another jurisdiction, whether state or federal, of misconduct constituting grounds for discipline of a lawyer or a voluntary surrender of a license to practice in connection with a disciplinary proceeding shall, for the purposes of proceedings pursuant to these rules conclusively establish such conduct. Accordingly, a Hearing Panel Subcommittee may take action without conducting a formal hearing.

(b) Any lawyer who is a member, active or inactive, of The West Virginia State Bar against whom any form of public discipline has been imposed by the authorities of another jurisdiction, whether state or federal, or who voluntarily surrenders his or her license to practice law in connection with disciplinary proceedings in another jurisdiction, whether state or federal, shall notify the Office of Disciplinary Counsel of such action in writing within ten days thereof. Failure to notify the Office of Disciplinary Counsel shall constitute an aggravating factor in any subsequent disciplinary proceeding.

(c) Upon receiving notice that a lawyer who is a member, active or inactive, has been publicly disciplined or has voluntarily surrendered his or her license to practice law in another jurisdiction, whether state or federal, Disciplinary Counsel shall, following an investigation pursuant to these rules, refer the matter to a Hearing Panel Subcommittee for appropriate action.

(d) If the lawyer intends to challenge the validity of the disciplinary order entered in the foreign jurisdiction or the voluntary surrender of his or her license to practice law in connection with a disciplinary proceeding, the lawyer must request a formal hearing and file with the Office of Disciplinary Counsel a full copy of the record of the disciplinary proceedings which resulted in imposition of the disciplinary order or the voluntary surrender of a license to practice law.

(e) At the conclusion of proceedings brought under this section, the Hearing Panel Subcommittee shall refer the matter to the Supreme Court of Appeals with the recommendation that the same discipline be imposed as was imposed by the foreign jurisdiction unless it is determined by the Hearing Panel Subcommittee that (1) the procedure followed in the foreign jurisdiction did not comport with the requirements of due process of law; (2) the proof upon which the foreign jurisdiction based its determination of misconduct is so infirm that the Supreme Court of Appeals cannot, consistent with its duty, accept as final the determination of the foreign jurisdiction; (3) the imposition by the Supreme Court of Appeals of the same discipline imposed in the foreign jurisdiction would result in grave injustice; or (4) the misconduct proved warrants that a substantially different type of discipline be imposed by the Supreme Court of Appeals.

**2.** The record shows that Mr. Wasser's use of client funds had been going on for some period of time, prompting Ms. Yates at one point in 2007 to obtain her own legal counsel who insisted that Mr. Wasser repay the money or that Ms. Yates would "turn him in." Ms. Yates also insisted that Mr. Wasser provide her with a letter exonerating her from any wrongdoing. Mr. Wasser "borrowed a portion and sold his train collection to replace the funds." Thereafter, Ms. Yates continued her employment with Mr. Wasser until November 5, 2008, when Ms. Yates quit her employment with Mr. Wasser. Several days later, on November 14, 2008, Ms. Yates filed a complaint with the Attorney Grievance Commission of Maryland informing them of Mr. Wasser's conversion of client funds. In his response to the complaint, Mr. Wasser acknowledged his conduct and tendered to the Grievance Commission a check in the amount of $183,633.99, which represented the balance in his escrow account.

yer; Rule 8.4C (c), engaging in deceit and misrepresentation; Rule 8.4C(d), engaging in conduct prejudicial to the administration of justice; and Rule 16–609, prohibited transactions.

The crux of the charges against Mr. Wasser was that he misappropriated over $91,000.00 from his Maryland Attorney Trust Account and used those funds for the payment of his personal and business obligations. During its investigation of the misappropriated funds, the Attorney Grievance Commission of Maryland requested that Mr. Wasser provide it with all client ledgers and records pertaining to Mr. Wasser's "Attorney Trust Account" for the periods of January 2002 through the date of the request, January 8, 2009. Mr. Wasser objected, arguing that the request entailed voluminous records and instead requested that his "QuickBooks" database and foreclosure database be used as a means to audit his accounts.

Mr. Wasser thereafter offered to settle the charges against him with a voluntary suspension. The Court of Appeals, however, offered only a voluntary disbarment. Mr. Wasser and the Maryland Grievance Commission subsequently filed a Joint Petition for Disbarment by Consent, which provided in part that Mr. Wasser agreed that there was sufficient evidence to sustain the allegations of misconduct.

Following his disbarment in Maryland, Mr. Wasser's license to practice law was, in reciprocal disciplinary proceedings, annulled in Virginia, the United States District Court of Appeals for the District of Columbia, the United States District Court of Maryland, and the United States Court of Appeals for the Armed Forces. Mr. Wasser's license to practice before the United States District Courts of West Virginia awaits the outcome of this action.[3]

The proceeding before this Court was initiated upon Mr. Wasser's timely notifying the Office of Lawyer Disciplinary Counsel that he had been disbarred in Maryland. Mr. Wasser requested a hearing, arguing that this Court should impose a substantially different type of discipline other than disbarment because West Virginia was his home. A hearing before the Hearing Panel Subcommittee was subsequently held, at which time Mr. Wasser noted that he was 69 years old and that when he finally retires from work, he wishes to do so as a lawyer. In his words, Mr. Wasser submitted that "I'm hoping that I'll have some life left here."

In response to a question by a Hearing Panel member, Mr. Wasser declined to provide the documentation to the Office of Disciplinary Counsel that the Maryland Grievance Commission had also requested: the checks and bank statements. Mr. Wasser explained that he could not physically and emotionally continue with this process for another six months.

At the conclusion of the hearing, the Hearing Panel Subcommittee concluded that Mr. Wasser had failed to demonstrate why a lesser sanction than disbarment should be imposed, finding that:

> [Mr. Wasser's] misappropriation was not a one-time occurrence. It happened periodically over a two to three year period and [Mr. Wasser] acted intentionally and knowingly when taking the money. Moreover, [Mr. Wasser] did not take the money from the escrow account for any extenuating reason, such as payment for life saving medical treatment, etc. Rather, [Mr. Wasser] had a judgment entered against him and thereafter suffered ordinary business and economic downturn. [Mr. Wasser] chose not to draw upon his malpractice insurance to satisfy the judgment and he further admitted he should have gotten a loan from a bank to cover his expenses.

The Hearing Panel Subcommittee recommended to this Court that Mr. Wasser's license to practice law in the State of West Virginia be annulled and that Mr. Wasser be required to abide by Rule 3.28 of the West Virginia Rules of Lawyer Disciplinary Procedure regarding the duties of disbarred lawyers.

---

**3.** Mr. Wasser was admitted to practice law in the District of Columbia in 1969, Maryland in 1976, Virginia in 1980 and West Virginia in 2000.

## II. Standard of Review

In Syllabus Point *3, The Committee on Legal Ethics of the West Virginia State Bar v. McCorkle,* 192 W.Va. 286, 452 S.E.2d 377 (1994), we held that:

A *de novo* standard applies to a review of the adjudicatory record made before the Committee on Legal Ethics of the West Virginia State Bar as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the Committee's recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the Committee's findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

## III. Discussion

We have previously held that "[p]ursuant to Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure, a final adjudication of professional misconduct in another jurisdiction conclusively establishes the fact of such misconduct for purposes of reciprocal disciplinary proceedings in this state." Syllabus Point 1, *Lawyer Disciplinary Board v. Post,* 219 W.Va. 82, 631 S.E.2d 921 (2006). Rule 3.20(a), *West Virginia Rules of Lawyer Disciplinary Procedure.* Moreover, we have further held that "[t]he provisions of Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure require the imposition of the identical sanction imposed by the foreign jurisdiction unless one of the four grounds provided for challenging the discipline imposed by a foreign jurisdiction is both asserted and established." Syllabus Point 4, *Lawyer Disciplinary Board v. Post, Id.*

In Syllabus Point 3 of our decision in *Post,* we identified the four grounds for challenging the discipline imposed by the foreign as follows:

Under the provisions of Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure, an attorney's right to challenge the disciplinary action of a foreign jurisdiction is limited to the following four grounds: (1) the procedure followed in the other jurisdiction violated due process; (2) there was a total infirmity of proof of misconduct; (3) imposition of the same discipline would result in a grave injustice; or (4) the misconduct warrants a substantially different type of discipline.

*See also* Rule 3.20(e), West Virginia Rules of Lawyer Disciplinary Procedure.[4]

In the case before us, Mr. Wasser does not dispute that he engaged in professional misconduct and misappropriated client funds for his personal and business expenses. Instead, Mr. Wasser argues that his punishment should be different here in West Virginia. We disagree.

The record is clear that Mr. Wasser converted client funds to pay a civil judgment that had been rendered against him—a civil judgment that was related to his work as an attorney. Instead of filing a claim under his malpractice insurance policy or obtaining a loan, Mr. Wasser instead decided to convert funds from his client trust account to pay the civil judgment against him. Thereafter, Mr. Wasser's personal assistant, Ms. Yates, obtained legal counsel to protect her interests. At Ms. Yates's insistence, the converted funds were repaid and Mr. Wasser provided Ms. Yates a signed letter exonerating her from any wrongdoing.

However, Mr. Wasser did not discontinue using client funds to pay for his personal and business obligations, and in November 2008 Ms. Yates quit her employment with Mr. Wasser and shortly thereafter filed a complaint with the Maryland Grievance Commission. In its investigation, the Commission requested copies of all records associated with Mr. Wasser's client trust accounts, but Mr. Wasser refused. Mr. Wasser then offered a voluntary suspension as punishment for his misconduct, but that offer was rejected. Instead, Mr. Wasser was given the option of voluntary disbarment. Mr. Wasser accepted the voluntary disbarment.

Shortly after his voluntary disbarment, Mr. Wasser published a letter to the commu-

4. *See* note 1, *supra.*

nity in the Cumberland, Maryland newspaper where he wrote, in part, "[w]ere it not for the letter writing of my former [sic] trusted and loyal office manager/Bookkeeper, who worked for me almost 20 years ..., this matter would never have become an issue with the Maryland State Bar. Presently, I continue practice as a member in good standing in the West Virginia Bar."

In *Lawyer Disciplinary Board. v. Kupec*, 202 W.Va. 556, 569, 505 S.E.2d 619, 632 (1998) (citations omitted), we noted that "[m]ost courts proceed from the general rule that absent compelling extenuating circumstances, misappropriation or conversion by a lawyer of funds entrusted to his/her care warrants disbarment" and that "restitution is not a defense to misappropriation." We have also held that "[i]n deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession." Syllabus Point 3, *The Committee on Legal Ethics of the West Virginia State Bar v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987). Further, we have held that "[d]isbarment of an attorney to practice law is not used solely to punish the attorney but is for the protection of the public and the profession." Syllabus Point 2, *In Re: Application for License to Practice Law by John W. Daniel*, 153 W.Va. 839, 173 S.E.2d 153 (1970).

Having thoroughly reviewed the record in this matter, and carefully considering the arguments and briefs of the parties, we find that Mr. Wasser has failed to establish that his misconduct warrants a substantially different punishment than that imposed by Maryland. Mr. Wasser, on a repeated basis, converted client funds to pay for his personal and business obligations. The repetitive nature of this unethical conduct is not to be condoned.

While Mr. Wasser professes to be remorseful for his unethical conduct, Mr. Wasser's letter to the Cumberland paper following his disbarment in Maryland suggests otherwise. As opposed to taking that opportunity to apologize to the community for his unethical conduct, Mr. Wasser instead appeared to be blaming his long-time personal assistant for turning him into the Maryland lawyer disciplinary authorities. Mr. Wasser fails to see that Ms. Yates, by reporting him to the Maryland disciplinary authorities, did more to protect Mr. Wasser's clients than Mr. Wasser (who was converting client funds).

It is clear that "[t]he provisions of Rule 3.20 of the West Virginia Rules of Lawyer Disciplinary Procedure require the imposition of the identical sanction imposed by the foreign jurisdiction unless one of the four grounds provided for challenging the discipline imposed by a foreign jurisdiction is both asserted and established." Syllabus Point 4, *Lawyer Disciplinary Board v. Post, supra.* Mr. Wasser has not established one of those grounds.

### IV. Conclusion

Accordingly, we accept the Hearing Panel Subcommittee's recommendation that Mr. Wasser's license to practice law in the State of West Virginia be annulled and that Mr. Wasser be required to abide by Rule 3.28 of the West Virginia Rules of Lawyer Disciplinary Procedure regarding the duties of disbarred lawyers.

License Annulled.