678 S.E.2d 60

**LAWYER DISCIPLINARY
BOARD, Petitioner**

v.

**Raymond David BROWN, Jr., an Adminis-
tratively Suspended Member of the West
Virginia State Bar, Respondent.**

No. 33516.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 27, 2009.

Decided May 6, 2009.

Rachael L. Fletcher Cipoletti, Esq., Chief Lawyer Disciplinary Counsel, Charleston, WV, for Petitioner.

Sherri D. Goodman, Esq., Goodman Advocacy, Charleston, WV, for Respondent.

PER CURIAM.

This is a lawyer disciplinary proceeding brought against Raymond David Brown, Jr., an administratively suspended member of the West Virginia State Bar,[1] by the Office of Disciplinary Counsel (hereinafter "ODC") on behalf of the Lawyer Disciplinary Board (hereinafter "the Board"). The Hearing Panel Subcommittee of the Board has found that Mr. Brown violated Rules 1.15(a), 1.15(b), 8.4(c), and 8.4(d) of the West Virginia Rules of Professional Conduct[2] and has recommended that his law license be suspended for an indefinite period with the right to petition for reinstatement three years from the date of his administrative suspension provided he satisfies certain conditions. Mr. Brown has acknowledged his misconduct and consented to the Board's recommended disposition. However, the ODC objects and contends that Mr. Brown's law license should be annulled. Based upon the parties' arguments, the designated record, and the pertinent authorities, we agree with the ODC and

order that Mr. Brown's law license be annulled.

## I.

## FACTS

Mr. Brown was admitted to the West Virginia State Bar on February 6, 2001, and began his career working in a prosecuting attorney's office. After two years in that office, he became a public defender. In February 2004, Mr. Brown formed a partnership with Cabell County attorney Douglas Reynolds. Mr. Brown primarily handled criminal matters and bankruptcy cases.

On March 17, 2005, Patty J. Massie retained Mr. Brown and Mr. Reynolds to represent her in a lawsuit arising from an automobile accident that occurred on June 10, 2003. Shortly thereafter, Mr. Brown and Mr. Reynolds dissolved their partnership. Mr. Brown then opened an office in Barboursville, Cabell County, West Virginia, where he lived. Ms. Massie's case had been handled primarily by Mr. Brown, and he continued to represent her. He filed suit on her behalf on June 9, 2005.

Ms. Massie's lawsuit was settled in October 2006 for $26,000.00. The settlement check was deposited by Mr. Brown into his client trust account at First Sentry Bank in Huntington, West Virginia, on October 16, 2006. On October 24, 2006, Mr. Brown transferred $10,000.00 from the trust account into his personal account for his legal fees in Ms. Massie's case.[3] On November 7, 2006, Mr. Brown wrote a check on the account to Ms. Massie for $8,020.00 which constituted her portion of the settlement proceeds. The remaining funds in the account were designated to pay subrogation claims held by two insurers which had paid Ms. Massie's outstanding medical bills resulting from injuries she sustained in the automobile accident.

Subsequently, Mr. Brown misappropriated the remaining funds. No disbursements were ever made with respect to the subroga-

---

1. Mr. Brown was placed on administrative suspension in July 2007 for failure to pay bar dues and comply with continuing legal education requirements.

2. *See* note 5, *infra*.

3. Mr. Brown's fee agreement with Ms. Massie called for a 40% contingent fee if a lawsuit was filed.

tion claims. Instead, Mr. Brown wrote multiple checks on the account to various third parties not related to Ms. Massie's case. He also wrote multiple checks to "cash" and several checks to local retail stores. By January 17, 2007, the account was overdrawn. On January 31, 2007, Mr. Brown deposited $143.77 into the account and then closed it.

On February 21, 2007, Mr. Brown entered an outpatient treatment program in Huntington, West Virginia, for cocaine addiction. After thirty days of treatment, he entered an inpatient program at the VA Center in Lexington, Kentucky. On March 21, 2007, his first day of treatment at the VA Center, Mr. Brown contacted Lawrence J. Lewis, Chief Disciplinary Counsel at that time, and reported that he had entered a substance abuse program in Lexington, Kentucky, for cocaine addiction. He also told Mr. Lewis that he had misappropriated funds from his client trust account.[4] Shortly thereafter, on March 30, 2007, Ms. Massie filed an ethics complaint alleging that Mr. Brown had stolen $8,000.00 that was designated to pay her outstanding medical bills resulting from injuries she sustained in an automobile accident. She also indicated that Mr. Brown had refused to provide her with her client file despite repeated requests.

Formal ethics charges were filed against Mr. Brown on August 21, 2007. Mr. Brown was charged with violating Rules 1.15(a),

1.15(b), 8.4(c), and 8.4(d) of the West Virginia Rules of Professional Conduct.[5] The matter proceeded to a hearing before the Board on January 18, 2008. The Board issued its report on June 24, 2008, wherein it found that Mr. Brown had misappropriated and converted the money in his client trust account. The Board recommended that Mr. Brown be suspended, retroactive to July 2007, for a period of three years, after which he could then petition for reinstatement provided that he satisfies the following conditions:

1. He is able to demonstrate to the ODC that, for a continuous period of three years, he has been in sustained full remission and sober and clean, as evidenced by a written report to that effect from his treating psychiatrist or psychologist; for purposes of this requirement "sober and clean" means free of illegal drugs and of legal drugs except when taken as prescribed by a licensed physician;

2. He has made full restitution to Ms. Massie in the amount recommended by the ODC;

3. He has paid the costs of this disciplinary proceeding;

4. He is continuing in treatment as recommended by his psychiatrist or psychologist; and

5. For a period of two years following his reinstatement, a lawyer approved by the

---

**4.** It appears that Mr. Brown began using cocaine after leaving the Air Force in 1991. He says that after starting college, he used cocaine only once or twice over the years until 2004, when he ran into the same acquaintance who first introduced him to it. Mr. Brown has acknowledged that he used the money in Ms. Massie's trust account primarily to purchase cocaine. He used some of the money to gamble while under the influence of cocaine. He also admitted that he was drinking and taking prescription medication at the same time.

**5.** Rule 1.15 of the West Virginia Rules of Professional Conduct provides, in pertinent part:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account designated as a "client's trust account" in an institution whose accounts are federally insured and maintained in the state where the lawyer's office is situat-

ed, or in a separate account elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

Rule 8.4 states that, "It is professional misconduct for a lawyer to ... (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice[.]"

ODC shall supervise his practice of law, including the monitoring of his trust accounts.

By letter dated July 22, 2008, the ODC filed its objection to the disposition recommended by the Board with this Court. On July 24, 2008, Mr. Brown, by counsel, filed a letter with this Court consenting to the Board's recommendation.

## II.

### STANDARD OF REVIEW

In Syllabus Point 3 of *Committee on Legal Ethics of the West Virginia State Bar v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994), we explained our standard of review as follows:

A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

We have also stated that "[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law." Syllabus Point 3, *Committee on Legal Ethics of the West Virginia State Bar v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984).

## III.

### DISCUSSION

As set forth above, the Board found that Mr. Brown violated Rules 1.15(a) and (b) and 8.4(c) and (d) of the Rules of Professional Conduct. Specifically, he failed to keep trust funds in a separate account; failed to promptly deliver trust funds to a third party; engaged in conduct involving dishonesty, fraud, deceit or misrepresentation; and en-

gaged in conduct prejudicial to the administration of justice. Simply put, Mr. Brown stole approximately $8,000.00 from his client trust account and used the money to purchase cocaine to support his drug addiction. He also failed to pay the subrogation claims of his client's insurers and failed to communicate with his client. Mr. Brown has acknowledged his misconduct, and thus, there is no dispute that he violated the Rules of Professional Conduct. Therefore, the only issue before this Court in this lawyer disciplinary proceeding is what sanctions should be imposed on Mr. Brown.

In Syllabus Point 4 of *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998), this Court explained,

Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted intentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

This Court also held,

Although Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates the factors to be considered in imposing sanctions after a finding of lawyer misconduct, a decision on discipline is in all cases ultimately one for the West Virginia Supreme Court of Appeals. This Court, like most courts, proceeds from the general rule that, absent compelling extenuating circumstances, misappropriation or conversion by a lawyer of funds entrusted to his/her care warrants disbarment.

Syllabus Point 5, *Jordan*.

In this case, the Board concluded that compelling extenuating circumstances did ex-

ist and that the appropriate sanction would be suspension of Mr. Brown's law license for at least a period of three years. In reaching that conclusion, the Board found that chemical dependency should be treated like alcoholism and considered a mitigating factor in determining the appropriate sanction based upon this Court's decision in *Lawyer Disciplinary Bd. v. Hardison*, 205 W.Va. 344, 518 S.E.2d 101 (1999). In that case, multiple complaints were filed by clients of attorney Richard E. Hardison. The complaints showed a pattern of neglecting clients, not communicating with clients, and failing to pursue clients' cases and meet deadlines. It was also alleged that Mr. Hardison had claimed attorney fees for collecting debts for doctors whose fees he had guaranteed, but at the time of the proceedings, there was no allegation that any of the doctors involved were owed any money, and there was no contention that Mr. Hardison had intentionally misappropriated or converted any funds. This Court found that Mr. Hardison's problems in operating his law practice were due to alcoholism. Recognizing that alcoholism is a disease and that Mr. Hardison was seeking treatment, this Court concluded that the appropriate sanction for his misconduct was suspension of his law license indefinitely with leave to petition for reinstatement to practice upon the completion of one year of sobriety supported by medical documentation. *Hardison*, 205 W.Va. at 352, 518 S.E.2d at 109.

In this proceeding, the Board found that Mr. Brown's conduct was a result of his cocaine addiction and that this was a mitigating factor that should be accorded great weight in determining the appropriate sanction. The Board also considered the fact that Mr. Brown had self-reported his misconduct, cooperated with the ODC in returning his clients' files, expressed remorse at his disciplinary hearing, and was participating in a treatment and rehabilitation program. The Board ultimately concluded that these were compelling circumstances that justified a recommendation that Mr. Brown's law license be suspended instead of annulled.

The ODC completely disagrees with the Board's recommendation and contends that the fact that Mr. Brown has a substance abuse problem cannot excuse his conduct and should not be considered a mitigating factor. The ODC acknowledges that this Court subscribes to the modern view that alcoholism, and by extension, substance abuse, is an illness. *Hardison*, 205 W.Va. at 351, 518 S.E.2d at 108. The ODC maintains, however, that for the public to have confidence in our disciplinary and legal system, lawyers who engage in the type of conduct exhibited by Mr. Brown must be removed from the practice of law.

The ODC also argues that this is not a case which fits the criteria of "compelling extenuating circumstances" and therefore, Mr. Brown should not merely be suspended for misappropriating his client's funds. In that regard, the ODC notes that Mr. Brown is a forty-year-old man who had practiced law for four years when he stole approximately $8,000.00 from his client trust account. He was charged with the duty of paying the subrogation claims of his client's insurers but instead knowingly and intentionally took the money for his own purposes. The ODC points out that this was the first time Mr. Brown had access to client funds and instead of protecting those funds, he misappropriated them for his own use. The ODC also notes that Mr. Brown's recovery and treatment did not stop his misconduct; rather, he ran out of his client's money to convert and that is the only reason the misappropriation ceased. The record shows that Mr. Brown depleted all of Ms. Massie's trust account by January 17, 2007, but did not enter a treatment program until February 21, 2007. Thus, the ODC concludes that the circumstances require that Mr. Brown's law license be annulled.[6]

As previously noted, Mr. Brown does not object to the suspension of his law license and asks this Court to accept the Board's recommendation. He contends the Board properly found that chemical dependency, like alcoholism, can serve as a mitigating

---

6. Pursuant to Rule 3.33 of the West Virginia Rules of Lawyer Disciplinary Procedure, a person whose license to practice law has been annulled may petition for reinstatement five years from the date of disbarment.

factor in determining the appropriate sanction. He maintains that his cocaine addiction was the cause of his misconduct. Mr. Brown also asserts that his recovery from his cocaine addiction has already been demonstrated by a meaningful and sustained period of successful rehabilitation. Mr. Brown further contends that the Board properly considered other mitigating factors including his cooperation with the ODC in the return of files from his practice, his showing of remorse at his hearing, and his lack of other disciplinary history.[7] Mr. Brown acknowledges that this Court generally disbars an attorney who has misappropriated funds, but argues that the Board properly found that compelling extenuating circumstances exist in his case which warrant the sanction of suspension instead of annulment. Thus, Mr. Brown asks this Court to accept the recommendation of the Board.

    We have repeatedly advised that " '[i]n disciplinary proceedings, this Court, rather than endeavoring to establish a uniform standard of disciplinary action, will consider the facts and circumstances [in each case], including mitigating facts and circumstances, in determining what disciplinary action, if any, is appropriate[.] Syl. pt. 2, [in part] *Committee on Legal Ethics v. Mullins*, 159 W.Va. 647, 226 S.E.2d 427 (1976).' Syllabus Point 2, [in part] *Committee on Legal Ethics v. Higinbotham*, 176 W.Va. 186, 342 S.E.2d 152 (1986)." Syllabus Point 4, in part, *Committee on Legal Ethics of the West Virginia State Bar v. Roark*, 181 W.Va. 260, 382 S.E.2d 313 (1989). We have also stated that "[t]he principle purpose of attorney disciplinary proceedings is to safeguard the public's interest in the administration of justice." Syllabus Point 3, *Daily Gazette v. Committee on Legal Ethics*, 174 W.Va. 359, 326 S.E.2d 705 (1984). Syllabus Point 2, *Hardison*. Accordingly,

    In deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.

Syllabus Point 3, *Committee on Legal Ethics of the West Virginia State Bar v. Walker*, 178 W.Va. 150, 358 S.E.2d 234 (1987).

    Recently, in *Lawyer Disciplinary Bd. v. Coleman*, 219 W.Va. 790, 639 S.E.2d 882 (2006), we annulled the license of an attorney who diverted and converted approximately $170,000.00 in legal fees paid by clients for bond work performed by his law firm into his personal bank account without his law firm's knowledge and then spent the money for his own personal benefit. We reiterated that "we do not take lightly those disciplinary cases in which a lawyer's misconduct involves the misappropriation of money. In such instances, we have resolutely held that, unless the attorney facing discipline can demonstrate otherwise, disbarment is the only sanction befitting of such grievous misconduct." *Id.*, 219 W.Va. at 797, 639 S.E.2d at 889. *See also, Jordan, supra,* 204 W.Va. 495, 513 S.E.2d 722 (annulling license of attorney who embezzled over $500,000.00 from an elderly client while acting as her appointed committee); *Lawyer Disciplinary Bd. v. Wheaton*, 216 W.Va. 673, 610 S.E.2d 8 (2004) (annulling license of attorney who repeatedly misappropriated and converted client funds for his own personal use).

    Based upon our review of the record and the arguments of counsel, we find that annulment of Mr. Brown's law license is the appropriate sanction in this case. Mr. Brown stole the money in his client trust account and violated other duties to his client. He clearly acted intentionally and knowingly when he violated the Rules of Professional Conduct. Moreover, as a result of his actions, Mr. Brown's client suffered immediate and actual damages because the subrogation claims against her were not paid.

    While this Court considered alcoholism as a mitigating factor in *Hardison*, the

---

7. The Board gave little weight to the fact that Mr. Brown did not have a disciplinary history because he had only practiced for four years before

he started using cocaine again. *See* note 4, *supra*.

abuse of an illegal substance is clearly distinguishable. Alcohol is a legal substance; cocaine is not. Thus, an attorney who embarks on the use of an illegal substance in the first instance is knowingly violating the law. Courts in some jurisdictions have absolutely rejected the idea of considering addiction to an illegal substance as a mitigating factor. For example, in *In re Demergian*, 48 Cal.3d 284, 256 Cal.Rptr. 392, 768 P.2d 1069 (1989), the Supreme Court of California, disbarring an attorney for misappropriating funds and rejecting his request for mitigation based on his addiction to cocaine and alcohol, stated,

> [C]ocaine use is hardly a mitigating factor. Petitioner became addicted through voluntary use of an illicit drug. . . . Apart from petitioner's subsequent rehabilitative efforts, his use of cocaine increases the danger he presents to the public, the courts, and the reputation of the legal profession. Logically, therefore, it is a factor in *aggravation.*

*Id.,* 256 Cal.Rptr. at 397, 768 P.2d at 1074 (emphasis in original). Similarly, the District of Columbia Court of Appeals has observed,

> [T]o permit mitigation on grounds of illegal drug use effectively would reward the attorney for illegal conduct occurring after he assumes his professional responsibilities. Such a result would adversely affect the perception of the Bar. Simply stated, people go to jail for conduct that Respondent offers as a mitigating factor. An informed public would find it intolerable that such a lawyer be granted special grace.

*In re Marshall,* 762 A.2d 530, 538 (D.C.2000).

Although this Court does not absolutely preclude addiction to illegal drugs as a consideration and while Mr. Brown's actions may have stemmed in part from his cocaine addiction, we simply cannot condone his behavior and cannot accept the Board's recommendation. There is never a valid excuse for stealing client trust funds. "'Misappropriation of funds by an attorney involves moral turpitude; it is an act infected with deceit and dishonesty.'" *Coleman,* 219 W.Va. at 797, 639 S.E.2d at 889 (quoting *Lawyer Disciplinary Bd. v. Kupec,* 202 W.Va. 556, 571, 505 S.E.2d 619, 634 (1998) (additional quotations and citation omitted)). An attorney who misappropriates client trust funds not only harms his clients but also undermines the confidence of the public in the legal profession. Therefore, contrary to the Board, we do not find that compelling extenuating circumstances exist in this case which justify a departure from our general rule that "misappropriation or conversion by a lawyer of funds entrusted to his/her care warrants disbarment." Syllabus Point 5, in part, *Jordan.*

## IV.

## CONCLUSION

Accordingly, for the reasons set forth above, this Court imposes the following sanctions:

(1) Mr. Brown's license to practice law in West Virginia is annulled;

(2) Prior to petitioning for reinstatement, Mr. Brown will make full restitution to Ms. Massie in the amount of $7,980.00;

(3) When filing his petition for reinstatement, Mr. Brown will submit a current written report from his treating psychiatrist/psychologist advising that his drug addiction and/or other psychological issues are under control to the point where, in the opinion of the professional, he could practice law without being a danger to the public, legal profession, or himself;

(4) Following reinstatement, Mr. Brown will continue treatment as recommended by his treating physicians, psychologists, and/or counselors;

(5) Following reinstatement, Mr. Brown's practice of law will be supervised for a period of two years; and

(6) Mr. Brown will pay the costs of these proceedings pursuant to Rule 3.15 of the West Virginia Rules of Lawyer Disciplinary Procedure.

License Annulled.

Justice KETCHUM dissents and files a dissenting opinion.

KETCHUM, J., dissenting:

Sometimes we need to mix a little mercy with justice.

This lawyer misappropriated his client's funds to support his drug problem. He has since sought treatment and has straightened up his life. An indefinite suspension with the right to petition the Court for reinstatement in three years provides plenty of protection to the public.

I respectfully feel that annulling this lawyer's license is not an appropriate sanction under the circumstances. The Hearing Panel Subcommittee of the Lawyer Disciplinary Board heard the evidence, considered the demeanor of the witnesses and of Mr. Brown, and made a careful, measured recommendation. I am not persuaded by the majority opinion's reasoning that the recommendations of the Board should be so lightly dismissed.

I therefore dissent.