No. 16-0869–*In re Petition for Reinstatement of L. Dante diTrapano*

**FILED**
**June 5, 2018**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Loughry, J., dissenting:

I commend the petitioner for the many improvements he has made in his life in recent years. According to the testimony presented before the Hearing Panel Subcommittee, he is now sober, employed, and a benefit to both his family and his community. Nonetheless, I believe the petitioner's prior professional misconduct–including serious misconduct against a client that is conspicuously absent from the majority's discussion–dictates that he should not be readmitted to the practice of law. In accordance with the recommendation of the Office of Disciplinary Counsel, I would deny this petition for reinstatement.

The petitioner was not simply suspended from the practice of law for a specified period of time; he was disbarred. Our law requires that if a disbarred attorney seeks readmission, this Court must take into account, *inter alia*, the lawyer's prior misconduct. *See*, *e.g., In re Smith*, 214 W.Va. 83, 85, 585 S.E.2d 602, 604 (1980) (noting necessity of looking to "the nature of the original offense for which the petitioner was disbarred") (internal citation omitted); Syl. Pt. 1, in part, *In re Brown*, 166 W.Va. 226, 273 S.E.2d 567 (1980) (stating "the seriousness of the conduct leading to disbarment is an important consideration"). Indeed, "the seriousness of the underlying offense leading to the disbarment

1

may, as a threshold matter, preclude reinstatement such that further inquiry as to rehabilitation is not warranted." *Id*. at 240, 273 S.E.2d at 574. Moreover, the review pursuant to a petition for readmission is not limited solely to the conduct that formed the specific basis for the disbarment: "[W]e do not view the inquiry on reinstatement as limited to the single issue of the precise offense that triggered disbarment. Most courts have concluded that [the] applicant's prior and present record of infractions can be considered." *Id.* at 239, 273 S.E.2d at 574 (citations omitted); *accord In re Reinstatement of Wiederholt*, 24 P.3d 1219, 1226 (Alaska 2001) (considering, as part of proceedings on petition for readmission, wrongful conduct that had not formed basis for disbarment).

Here, the petitioner's prior misconduct was both egregious and dishonest. As this Court explained in its opinion denying the petitioner's prior petition for reinstatement,

> [our] precedent obliges this Court to proceed by first considering the nature of the offenses leading to Mr. [d]iTrapano's disbarment and other relevant wrongdoings. His misconduct includes a prior admonishment; illegal drug use; multiple arrests, some of which were related to his possession of illegal drugs; knowingly possessing various firearms in and affecting interstate commerce while being an unlawful user of and addicted to a controlled substance, a crime for which he received a felony conviction; knowingly making a false statement and representation to a licensed dealer of firearms regarding his dependence on a controlled substance; knowingly making a false statement for the purpose of influencing the actions of a bank, a crime for which he received a second felony conviction; and "misappropriating" client funds.

2

*In re Reinstatement of diTrapano*, 233 W.Va. 754, 766, 760 S.E.2d 568, 580 (2014). Critically, with the exception of his federal felony conviction for illegal possession of firearms by a person using and addicted to controlled substances, the petitioner's most serious misconduct was directed toward one of his clients. Knowing that the client, who was also a business partner, wanted to use liquid assets for a joint business venture instead of obtaining a bank loan, the petitioner nevertheless forged the client's name on bank documents to obtain a $500,000 loan. He then lied to bank officials, stating that the client had personally signed the loan documents. Possibly to conceal his actions, the petitioner listed his personal address as the address for the bank account in which the loan proceeds were deposited. This conduct formed the basis for the petitioner's second federal felony conviction: knowingly making a false statement for the purpose of influencing the actions of a bank. Further, while most of the loan proceeds were ultimately used for the business venture, the petitioner kept $35,000 of the loan money for himself.

The petitioner's misconduct toward this client did not stop with the bank loan. The petitioner also wrongfully used the same client's power of attorney to open a margin loan against the client's investment accounts at a different financial institution. Then, over a series of transactions, the petitioner stole $1.4 million from the margin account. When his then-law partners discovered this theft, in order to protect both the client and the law firm's reputation, the partners paid restitution to the client and attributed this sum as income to the

3

petitioner. These acts of conversion and dishonesty with regard to a client must be considered for purposes of his petition for reinstatement.

The unauthorized use of the client's power of attorney to steal $1.4 million was, understandably, a major concern for this Court in the 2014 opinion denying the petitioner's first petition for reinstatement.[1] Inexplicably, however, the majority's opinion today is entirely devoid of any mention of this wrongdoing–even when reaching the conclusion that the public's confidence in the administration of justice would not be adversely affected by readmitting the petitioner to the practice of law. Instead, the majority's analysis focuses entirely upon the two felony convictions[2] and the petitioner's recovery from drug addiction.

While recovery from drug abuse is laudable, it should not be a mitigating factor when the lawyer's misconduct involved dishonesty. The Court's opinion denying the

---

[1] *See diTrapano*, 233 W.Va. at 768-69, 760 S.E.2d at 582-83.

[2] While turning a blind eye to the conversion of client funds, the majority also grossly misrepresents the position of the Office of Disciplinary Counsel ("ODC"). It is *not* "the ODC's position that a convicted felon may never be reinstated to practice law in West Virginia[,]" as the majority claims. Rather, the ODC argues that the petitioner's two felony convictions *in conjunction with his other misbehavior* warrant the denial of this petition. The ODC points out that, "[t]o date, this Honorable Court has not reinstated the law license of any twice convicted felon in recovery from addiction who also misappropriated client funds." The misappropriation of huge sums of a client's money, using deceitful methods, should be central to this Court's consideration.

4

petitioner's earlier petition for reinstatement provides several reasons for this position. For example, unlike alcohol addiction, cocaine and other illicit substances are illegal, "[t]hus any attorney who embarks on the use of an illegal substance in the first instance is knowingly violating the law." *diTrapano*, 233 W.Va. at 767, 760 S.E.2d at 581 (quoting *Lawyer Disciplinary Board v. Brown*, 223 W.Va. 554, 561, 678 S.E.2d 60, 67 (2009)). Moreover, in this Court's leading case treating alcoholism as a mitigating factor, "the gravaman" of that lawyer's actions "show[ed] a pattern of neglect or inattention to the needs of his clients, lack of communication with clients, and failure to pursue his clients' cases and meet deadlines." *diTrapano*, 233 W.Va. at 769, 760 S.E.2d at 583 (quoting *Lawyer Disciplinary Board v. Hardison*, 205 W.Va. 344, 351, 518 S.E.2d 101, 108 (1999)). This Court has already concluded that the petitioner's misconduct "was not passive like the conduct in *Hardison*; Mr. [d]iTrapano affirmatively acted in a deceitful and dishonest manner." *diTrapano*, 233 W.Va. at 769, 760 S.E.2d at 583. The four-year passage of time since the denial of the petitioner's earlier request for readmission does not change these facts.

The majority's focus in this matter should have been upon the petitioner's forgery of a client's name to loan documents, the theft of a portion of the loan proceeds, the unauthorized use of the client's power of attorney to steal an additional $1.4 million, and how

5

this misconduct would impact the public's perception of the administration of justice.[3]  For the reasons set forth herein, I respectfully dissent.[4]

---

[3]Furthermore, the majority provides no explanation for why it is taking the unprecedented step of issuing the mandate contemporaneously with its opinion.  There is simply no reason to override the thirty-day provision of Rule 26(b) of the Rules of Appellate Procedure, and the Court has not expedited the mandate in other lawyer reinstatement cases.  Moreover, although the majority imposes a condition of supervised practice, expediting the mandate deprives the ODC of any time to ensure that a proper plan of supervision is in place.

[4]Although I disagree with the majority's decision to grant this petition for reinstatement, I do agree with their rejection, albeit without explanation, of one particular recommendation of the Hearing Panel Subcommittee–the recommendation that the petitioner "*be reinstated without further petition or hearings after* he has honored his commitment to the West Virginia State Bar by successfully completing the terms of his December 1, 2016 WV[J]LAP monitoring agreement/contract.  *The date of completion in the contract is November 30, 2021.*"  (emphasis added).

This recommendation would be ill-advised for several reasons.  First, if other addicted lawyers think that their law licenses may be suspended, or their reinstatements delayed, based upon requirements imposed by the West Virginia Judicial and Lawyer Assistance Program ("WVJLAP"), those lawyers may be discouraged from voluntarily participating in this valuable program.  Second, imposing such a requirement would create a strong motive for the petitioner to be dishonest with program officials for fear that any non-compliance would endanger his reinstatement.  Third, ordering this condition would have the practical effect of shifting to Mr. Albury, the WVJLAP director, the ultimate decision-making authority on whether the petitioner is eligible for readmission.  When deciding whether the petitioner had successfully completed the program, Mr. Albury would also be deciding whether the petitioner would receive a law license.  Such a procedure would run contrary to this Court's authority as the final arbiter of all legal ethics matters.  *See* Syl. Pt. 3, *Comm. on Legal Ethics of W.Va. State Bar v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984) ("This Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law.").