690 S.E.2d 119

### LAWYER DISCIPLINARY BOARD, Complainant,

v.

### Jeffrey L. BARTON, A Member of the West Virginia State Bar, Respondent.

### No. 34623.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 12, 2010.

Decided Jan. 29, 2010.

---

Rachael L. Fletcher Cipoletti, Office of Disciplinary Counsel Charleston, WV, for the Complainant.

Michael J. Del Giudice, Ciccarello, Del Giudice & LaFon, Charleston, WV, for the Respondent.

**PER CURIAM:**

This lawyer disciplinary proceeding against Jeffrey L. Barton (hereinafter referred to as "Mr. Barton") was brought to this Court by the Office of Disciplinary Counsel (hereinafter referred to as the "ODC") on behalf of the Lawyer Disciplinary Board (hereinafter referred to as the "Board"). The Board's Hearing Panel Subcommittee determined that Mr. Barton committed numerous violations of the Rules of Professional Conduct and recommended that Mr. Barton's law license be annulled, among other recommendations that will be more fully set forth in this opinion. Mr. Barton argues, however, that while his misconduct merits discipline, it falls short of necessitating a suspension or annulment. Based upon the parties' arguments to this Court, the record designated for our consideration, and the pertinent authorities, we adopt the recommendations set forth by the Hearing Panel Subcommittee as molded by this Court.

**I.**

### FACTUAL AND PROCEDURAL HISTORY

Mr. Barton is a solo practitioner whose law practice is in Nitro, West Virginia. He was admitted to the West Virginia State Bar in 1996. The factual history underlying this lawyer disciplinary proceeding began in 2003.

#### A. Personal Injury Action for Ms. Freeda Pringle

Ms. Freeda Pringle was involved in an automobile accident and Mr. Barton was retained to represent her interests in a personal injury claim arising from her injuries. Mr. Barton and Ms. Pringle entered into an oral agreement wherein Mr. Barton would retain one-third of anything recovered on behalf of Ms. Pringle, and Ms. Pringle would pay costs and expenses. A settlement was reached with the three insurers involved, totaling $65,000. The first settlement check for $20,000 was deposited into Mr. Barton's IOLTA[1] account on July 25, 2003. The second check, also for $20,000, was deposited

---

1. "IOLTA is an acronym for Interest of Lawyer Trust Accounts." *Lawyer Disciplinary Bd. v. Askin*, 203 W.Va. 320, 324 n. 8, 507 S.E.2d 683, 687 n. 8 (1998) (per curiam). Lawyers are re-

into the IOLTA account on August 1, 2003. On September 9, 2003, the final settlement check for $25,000 was deposited into the IOLTA account. In February 2004, Ms. Pringle passed away at ninety-two years of age. The subject of the instant case arises as a result of a dispute over the disbursement of these settlement proceeds.

### B. Ethics Complaint Filed by the Executrix, Mrs. Karen Richardson

On July 1, 2004, the executrix of Ms. Pringle's estate, Mrs. Karen Richardson, who was Ms. Pringle's daughter, met with Mr. Barton and requested an accounting of monies from the personal injury settlement and a return of any balance of the settlement proceeds. By letter dated July 28, 2004, Mr. Barton provided an accounting of his services and indicated that no money was owed to Ms. Pringle's estate and, further, that any money due to Ms. Pringle had been paid to her during her lifetime. Mr. Barton charged the estate a fee of $3,000 for his time involved in providing the accounting.

On April 7, 2006, the estate executrix filed a verified ethics complaint against Mr. Barton with the ODC. The complaint asserted that Ms. Pringle had a Medicare lien from medical treatments in the amount of $18,500 that was never paid to Medicare from the settlement proceeds received by Mr. Barton. Further, Ms. Pringle owed an additional amount of $2,200 for hearing aids replaced as a result of the underlying car accident that Mr. Barton did not pay from the proceeds of the settlement monies. Mr. Barton, in his answer, asserted that he paid the sum of $20,000 to Ms. Pringle during her lifetime, representing her portion of the settlement proceeds. In several responses, Mr. Barton also offered to pay certain sums to settle the ethics complaint.

### C. Civil Action Involving the Executrix, Mrs. Karen Richardson

On July 27, 2006, subsequent to the filing of the verified ethics complaint, the executrix of the estate filed a civil action against Mr. Barton.[2] A settlement was reached between the parties in May 2007, whereby Mr. Barton was to pay the sum of $100,000 to the executrix of the estate on or before February 28, 2008. Mr. Barton also agreed to repay the additional sum of $3,000 as a refund for the excessive charges he billed to the estate for producing the accounting of his services. This settlement agreement was breached, and a new settlement agreement was entered into on August 1, 2007. Mr. Barton agreed that the $20,000 paid under the initial agreement was forfeited and he further agreed to pay the full $103,000 as well as the pending Medicare lien of $18,500 before October 1, 2010. At the time of the underlying hearing in this matter, it was represented that Mr. Barton had paid $46,000 in restitution under the settlement agreement from the action filed on behalf of the estate against him. However, it was also illustrated that Mr. Barton was in breach of the settlement agreement and had made no payments since August 2008, despite the executrix's willingness to accept lower monthly payments than the original monthly amount that had been agreed to by the parties.[3]

### D. Disciplinary Proceedings and Disposition of the Ethics Complaint

Mrs. Richardson, as the executrix of the estate, filed a verified ethics complaint

---

quired to maintain such an account under Rule 1.15 of the Rules of Professional Conduct. *See infra* note 7.

**2.** The Hearing Panel Subcommittee limited the scope of its review to the ethics complaint involving the original $65,000 in settlement proceeds as a result of Ms. Pringle's automobile accident. Insofar as the civil action is relevant to the issue of mitigating or aggravating factors, and is helpful to understanding the full factual scenario between the parties, it is summarized herein. It is not a basis for this Court's ultimate determination that Mr. Barton misappropriated the amounts of money due to Medicare and to Beltone out of the personal injury settlement amounts; however, it is a basis for this Court's determination of the appropriate sanctions to be imposed.

**3.** There is much disagreement as to the amount of restitution that Mr. Barton has made to the estate pursuant to the settlement agreement entered into as a result of the civil action filed by the estate against him. Mr. Barton asserts that he has made payments totaling over $80,000. However, there is no dispute that Mr. Barton is in breach of the settlement agreement and that he has not made any payments pursuant to the settlement agreement since August 2008.

against Mr. Barton with the ODC on April 7, 2006. In response, Mr. Barton averred that he paid the amount of $20,000, which he argued represented payment in full, to Ms. Pringle during her lifetime. In his response, Mr. Barton also offered to pay certain amounts to the estate "as full and final satisfaction of this complaint." By further response, Mr. Barton attached two checks from August 2003, made payable to and endorsed by Ms. Pringle, which totaled $1,850. He also represented that he had made cash payments to her in the amounts of $15,000 and $350. Again, Mr. Barton offered to pay a sum of $8,000 to the estate for a settlement of the complaint. However, the estate disputed that the cash amounts were evidenced in the bank records of Ms. Pringle.[4] Further, on July 15, 2006, Mr. Barton provided an accounting of his services, asserting that he incurred 115.5 hours of time on matters for Ms. Pringle that were unrelated to her personal injury action. However, Mr. Barton stated that he would reduce his charges to 57.5 hours at an hourly rate of $100 and tender $9,360.55 to her estate.

A Statement of Charges was filed against Mr. Barton on December 12, 2008, and the matter proceeded to hearing on April 7, 2009. Because of the factual disputes regarding the cash payments, the Hearing Panel Subcommittee limited its analysis regarding the al-

leged conversion and misappropriation findings to the monies that should have been paid by Mr. Barton to Medicare and Beltone out of the original $65,000 in personal injury settlement proceeds, which had been received in summer 2003 by Mr. Barton on behalf of Ms. Pringle. Thus, the Hearing Panel Subcommittee determined that this case involves a sum of $20,700, which consists of $18,500 in a Medicare lien and $2,200 owed to Beltone for the replacement hearing aids. Despite his failure to pay these debts, Mr. Barton's IOLTA account did not have sufficient funds to cover such expenses at the time that the estate became involved and asked for an accounting. Mrs. Richardson, as executrix of Ms. Pringle's estate, asked for an accounting on July 1, 2004. The evidence introduced before the Hearing Panel Subcommittee showed that on July 20, 2004, Mr. Barton's IOLTA account reflected a balance of $11,304.91, which was reduced to $8,992 by July 30, 2004. By September 30, 2005, the IOLTA account had a negative balance of $451. It is undisputed that the two medical providers were not paid by this time.[5]

As a result of the above mentioned conduct and with consideration of mitigating and aggravating factors,[6] the Hearing Panel Subcommittee found that Mr. Barton violated Rules 1.15(a) and (b) of the Rules of Professional Conduct[7] by failing to promptly dis-

4. Subsequent to the ODC proceedings, Mr. Barton produced a deposit slip verifying that $15,000 had been deposited into Ms. Pringle's bank account on September 9, 2003.

5. The $2,200 owed to Beltone was ultimately paid through monies received by the estate from Mr. Barton as partial satisfaction of the settlement agreement reached in the civil suit. The Medicare lien has not been paid.

6. Several aggravating factors were found: dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge wrongdoing, the vulnerability of an elderly woman victim, and failure to honor settlement agreements in civil litigation stemming from the same conduct. The only mitigating factor found was the lack of a prior disciplinary record.

7. The relevant portions of Rule 1.15(a) and (b) of the West Virginia Rules of Professional Conduct provide as follows:

**Rule 1.15. Safekeeping property.**

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account designated as a "client's trust account" in an institution whose accounts are federally insured and maintained in the state where the lawyer's office is situated, or in a separate account elsewhere with the consent of the client or third person. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client

burse the $20,700 owed to medical providers and for converting the same to his own personal use. Because it was found that Mr. Barton failed to timely provide an accurate accounting of the $65,000 in personal injury settlement proceeds and that he failed to tender Ms. Pringle's client file to her estate upon request, the Hearing Panel Subcommittee determined that Mr. Barton also violated Rules 1.15(c) and 1.16(d) of the Rules of Professional Conduct.[8] Further, the Hearing Panel Subcommittee decided that, due to his commingling, misappropriation, and conversion of funds, Mr. Barton engaged in dishonest, fraudulent, and deceitful conduct in violation of Rules 8.4(c) and (d) of the Rules of Professional Conduct.[9] Moreover, it was found that Mr. Barton charged an excessive fee of $3,000 to prepare a fraudulent account-

ing of his services in July 2004. Thus, the Hearing Panel Subcommittee determined that Mr. Barton violated Rules 1.5 [10] and 8.4(c) [11] of the Rules of Professional Conduct. Finally, the Hearing Panel Subcommittee recognized that Mr. Barton, in his responses to the filing of the formal ethics complaint by Mrs. Richardson as executrix of the estate, attempted to negotiate a settlement without first advising her in writing that independent representation was appropriate. As a result, it was determined that Mr. Barton violated Rule 1.8(h) of the Rules of Professional Conduct.[12]

Based on these conclusions, the Hearing Panel Subcommittee recommended that Mr. Barton's law license be annulled; that he make full restitution to the estate in the amount of $31,183.39; [13] that he make resti-

---

or third person, shall promptly render a full accounting regarding such property.

8. Rules 1.15(c) and 1.16(d) of the West Virginia Rules of Professional Conduct state, in relevant part:
 **Rule 1.15. Safekeeping property.**
 (c) When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and severance of their interests. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separate by the lawyer until the dispute is resolved.
 **Rule 1.16. Declining or terminating representation.**
 (d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as ... surrendering papers and property to which the client is entitled[.]

9. The relevant portions of Rule 8.4 of the West Virginia Rules of Professional Conduct provide as follows: "[i]t is professional misconduct for a lawyer to: ... (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice[.]"

10. Rule 1.5 of the West Virginia Rules of Professional Conduct provides, in relevant part, as follows:
 **Rule 1.5. Fees.**
 (a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
 (1) the time and labor required, the novelty and difficulty of the questions involved, and skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
 (3) the fee customarily charged in the locality for similar legal services;
 (4) the amount involved and results obtained;
 (5) the time limitations imposed by the client or by the circumstances;
 (6) the nature and length of the professional relationship with the client;
 (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
 (8) whether the fee is fixed or contingent.

11. See *supra* note 9 for the relevant text of Rule 8.4(c).

12. West Virginia Rule of Professional Conduct, Rule 1.8(h) provides:
 **Rule 1.8. Conflict of interest: Prohibited transactions.**
 (h) A lawyer shall not make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless permitted by law and the client is independently represented in making the agreement, or settle a claim for such liability with an unrepresented client or former client without first advising that person in writing that independent representation is appropriate in connection therewith.

13. This amount was arrived at by subtracting $19,050 (the documented amount of Mr. Barton's payments to Ms. Pringle, including two checks totaling $1,850; a $15,000 cash deposit into Ms. Pringle's account; and the $2,200 payment to Beltone) from the amount owed to Ms. Pringle and/or her estate. The total amount

tution for any Medicare interest incurred by the estate; that all such restitution be made prior to petitioning for reinstatement of his law license; that Mr. Barton pay the costs of the disciplinary proceedings; that, upon successful petition for reinstatement, Mr. Barton undergo supervised practice for two years; and that, upon successful petition for reinstatement, Mr. Barton hire an accountant to audit the office accounting records for a period of two years. Mr. Barton agreed that he mishandled the settlement proceeds. However, he disagreed with the recommendations of the Hearing Panel Subcommittee because he stated his behavior was negligent and not intentional. Thus, while recognizing that some form of discipline is appropriate, he argues that his behavior does not warrant an annulment or even a suspension.[14] This matter now comes before this Court for resolution.

## II.

### STANDARD OF REVIEW

■ Although the Board makes recommendations to this Court regarding sanctions

to be imposed upon an attorney for ethical violations, we have held that " '[t]his Court is the final arbiter of legal ethics problems and must make the ultimate decisions about public reprimands, suspensions or annulments of attorneys' licenses to practice law.' Syllabus point 3, *Committee on Legal Ethics of the West Virginia State Bar v. Blair*, 174 W.Va. 494, 327 S.E.2d 671 (1984)." Syl. pt. 1, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003).

■ Our standard of review of proceedings before the Board was set out in Syllabus point 3 of *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994), as follows:

A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment. On the other

owed to Ms. Pringle and/or her estate was determined to be $50,233.33. This total amount due represents Ms. Pringle's two-thirds portion of the settlement proceeds, after deducting expenses, of $29,533.33; the $18,500 Medicare lien; and the $2,200 Beltone payment. Thus, the total amount owed to Ms. Pringle and/or her estate was $50,233.33 minus the $19,050 that was already paid, providing a total amount of $31,183.39 still owed to Ms. Pringle's estate.

The appeal briefs filed by the ODC mistakenly state that the Hearing Panel Subcommittee recommended that a condition of successful petitioning for reinstatement be that full restitution also be made under the civil action settlement agreement entered into between the estate and Mr. Barton in the Circuit Court of Kanawha County. A close reading of the Hearing Panel Subcommittee's recommendations reveals this conclusion by the ODC to be inaccurate. The Hearing Panel Subcommittee specifically limited the scope of its analysis to the misappropriated funds from the personal injury settlement that Mr. Barton settled on behalf of Ms. Pringle, without consideration of the civil settlement reached between the estate and Mr. Barton. Further, the recommendations as stated by the Hearing Panel Subcommittee specifically set forth that the restitution required prior to petitioning for reinstatement is restitution due pursuant to the original $65,000 personal injury settlement entered into on Ms. Pringle's behalf.

However, while it was not a recommended sanction set forth by the Hearing Panel Subcommittee, this Court recognizes its authority to determine the appropriate disposition in lawyer disciplinary proceedings. *See* Syl. pt. 3, in part, *Committee on Legal Ethics v. McCorkle*, 192 W.Va. 286, 452 S.E.2d 377 (1994) ("A *de novo* standard applies to a review of the adjudicatory record made before the [Lawyer Disciplinary Board] as to questions of law, questions of application of the law to the facts, and questions of appropriate sanctions; this Court gives respectful consideration to the [Board's] recommendations while ultimately exercising its own independent judgment."). Because the settlement entered into between Mr. Barton and the estate of Ms. Pringle is intertwined with, and is a result of, the underlying misappropriation of funds from the personal injury settlement, this Court determines that restitution must be made in both the personal injury settlement action and in the estate civil action filed against Mr. Barton. Thus, the issue of restitution due pursuant to the settlement agreement between Mr. Barton and the estate is an additional prerequisite to a petition for reinstatement of Mr. Barton's law license.

14. Rather, Mr. Barton states that the proper discipline should take the form of office management classes so that he can learn the appropriate techniques to conform with the rules of professional responsibility.

hand, substantial deference is given to the [Board's] findings of fact, unless such findings are not supported by reliable, probative, and substantial evidence on the whole record.

*Accord* Syl. pt. 3, *Lawyer Disciplinary Bd. v. Cunningham,* 195 W.Va. 27, 464 S.E.2d 181 (1995). Mindful of these standards, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

■ The ODC urges this Court to accept the recommendations as set forth by the Hearing Panel Subcommittee. In so doing, the ODC contends that Mr. Barton violated duties to his client, to the public, to the legal system, and to fellow members of the legal profession. It is alleged that Mr. Barton failed to adequately represent Ms. Pringle's interests during her lifetime and failed to pay the outstanding medical bills from her personal injury suit. Rather, as expressed by the ODC, Mr. Barton commingled and misappropriated the funds due to Ms. Pringle as a result of the personal injury settlement agreement. Further, the ODC avers that, after his client's death, Mr. Barton created a

fraudulent billing statement to avoid detection of his misconduct and inappropriately charged the client's estate for the preparation of the duplicitous accounting of his services. Conversely, Mr. Barton argues that the real issue is whether his conduct was negligent commingling of funds or intentional theft. He argues that his actions were not intentional, and, while they justify discipline, they do not warrant suspension or annulment.[15]

■ We review this case with the recognition that the ODC is required "to prove the allegations of the formal charge by clear and convincing evidence." Syl. pt. 1, in part, *Lawyer Disciplinary Bd. v. McGraw,* 194 W.Va. 788, 461 S.E.2d 850 (1995). Mr. Barton argues that the main evidence used against him was an alleged failure to provide Ms. Pringle with $15,000 that was in the form of a check made out to "Cash," which he claims he cashed and then deposited into Ms. Pringle's bank account. While there was ample questioning before the Hearing Panel Subcommittee, he argues that such an allegation of failure to provide this money to Ms. Pringle was never proved. A review of the

---

15. We acknowledge that Mr. Barton argues that the ethical complaint against him was not filed in a timely manner, as well as his argument that once the complaint was filed, the formal charges were not filed in a reasonable time. This Court rejects both arguments.

Rule 2.14 of the Rules of Lawyer Disciplinary Procedure provides that "[a]ny complaint filed more than two years after the complainant knew, or in the exercise of reasonable diligence should have known, of the existence of a violation of the rules of Professional Conduct, shall be dismissed by the Investigative Panel." While Mr. Barton admits that he improperly handled the monies of Ms. Pringle's settlement, he asserts that she never complained about any improper handling during her lifetime, and she died in February 2004. The Hearing Panel Subcommittee limited its charges to the disbursement of the original settlement money that totaled $65,000 and was received in 2003. The original ethics complaints in this matter were not filed until April 2006, more than two years after Ms. Pringle's death. We reject Mr. Barton's rationale. While Mr. Barton contends that the charges were not timely filed, the complaint was received by ODC on April 7, 2006, less than two years after Mr. Barton tendered the July 2004 fraudulent billing statement to the estate executrix, which caused her to seek counsel. Further, the bank records

show that Mr. Barton finally depleted the trust account, whose funds are subject to this action, in September 2005. At a minimum, the last unethical act in connection with the misappropriation and conversion of funds occurred on or about July 28, 2004, with the creation of the fraudulent accounting. This was the first instance that any representative of the estate had reason to question Mr. Barton's actions. The ethics complaint was filed within two years of that date and was, therefore, timely.

Additionally, Mr. Barton argues that, after the ethics charges were filed, it then took the ODC another two years before it filed its formal charges, which is an unreasonable length of time. While this Court does not condone unreasonable lapses of time, we have previously recognized that "[a] delay of approximately two years between the receipt of ethics complaints and the institution of disciplinary proceedings in this Court does not warrant a dismissal of such proceedings, absent a showing that the delay resulted in prejudice or disadvantage to the respondent-attorney." Syl. pt. 1, *Committee on Legal Ethics of West Virginia State Bar v. Pence,* 161 W.Va. 240, 240 S.E.2d 668 (1977) (per curiam). Finding no showing of prejudice or disadvantage to Mr. Barton, we reject his argument regarding the timeliness of the institution of the formal charges.

record reveals to this Court, however, that the issue regarding the $15,000 check made out to "Cash" was not considered by the Hearing Panel Subcommittee in reaching its determination. The Hearing Panel Subcommittee properly found that the evidence failed to prove a misappropriation by Mr. Barton of the $15,000 check made out to "Cash." Thus, the Hearing Panel Subcommittee limited its scope, post-hearing, to the misappropriation of the monies owed to Medicare and to Beltone. Though he disagrees with whether his behavior should be classified as intentional thievery or merely negligent mismanaging of funds, Mr. Barton, by his own admission, mishandled the money for these specific medical bills. Further, the underlying evidence was clear that Mr. Barton failed to provide an accurate accounting of the personal injury settlement proceeds to the estate and, significantly, that he charged an excessive fee for the fraudulent accounting of the monies. Finally, Mr. Barton attempted to engage in an improper settlement with the estate regarding the ethics charges. Therefore, this Court will not disturb the findings made by the Hearing Panel Subcommittee that Mr. Barton violated various provisions of the Rules of Professional Conduct.

We now turn our discussion to consider the appropriate sanctions that should be imposed on Mr. Barton for his misconduct. The Hearing Panel Subcommittee recommends license annulment, as well as several other requirements prior to possible future reinstatement. However, Mr. Barton suggests that annulment, and even the lesser restriction of suspension, is too harsh given the non-intentional nature of his actions. As this Court has previously recognized,

> Rule 3.16 of the West Virginia Rules of Lawyer Disciplinary Procedure enumerates factors to be considered in imposing sanctions and provides as follows: "In imposing a sanction after a finding of lawyer misconduct, unless otherwise provided in these rules, the Court [West Virginia Supreme Court of Appeals] or Board [Lawyer Disciplinary Board] shall consider the following factors: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession; (2) whether the lawyer acted in-

tentionally, knowingly, or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of any aggravating or mitigating factors."

Syl. pt. 4, *Office of Lawyer Disciplinary Counsel v. Jordan*, 204 W.Va. 495, 513 S.E.2d 722 (1998).

 Considering the first enumerated factor, we agree with the ODC that Mr. Barton violated duties to his client, to the public, to the legal system, and to the profession. "[A]ttorney disciplinary proceedings are primarily designed to protect the public, to reassure it as to the reliability and integrity of attorneys and to safeguard its interest in the administration of justice[.]" *Committee on Legal Ethics v. Keenan*, 192 W.Va. 90, 94, 450 S.E.2d 787, 791 (1994). *Accord Lawyer Disciplinary Bd. v. Sims*, 212 W.Va. 463, 469, 574 S.E.2d 795, 801 (2002) (per curiam) (Davis, J., concurring, in part, and dissenting, in part). While there is no dispute regarding the personal injury settlement reached on behalf of Ms. Pringle during her lifetime, the evidence shows that Mr. Barton did not diligently represent her interests when he neglected to pay the outstanding medical bills under her personal injury suit. Further, the unpaid portions, at a minimum, should have been forwarded to her estate. Mr. Barton offered to pay such monies to the estate only after the estate instituted both an ethics complaint and a civil suit. Mr. Barton commingled and misappropriated the funds due to Ms. Pringle during her lifetime, then, when asked by the estate for an accounting of the personal injury settlement monies, he created a fraudulent billing statement and charged an excessive fee for his time involved in creating the bill. Commingling of client funds, coupled with failure to rectify the situation when questioned about the finances, results in a determination that Mr. Barton's actions lacked integrity and honesty and that he failed to safeguard the interests of Ms. Pringle and the general public.

 The second factor to consider is whether Mr. Barton acted intentionally and knowingly. Mr. Barton argues that he was experiencing rough economic times and that

the misappropriation of funds was a result of mismanagement and poor bookkeeping on his part, but that it was not intentional. ODC, however, argues that his deceit was intentional and calculated to take advantage of the death of his client to cover up his monetary indiscretions. This argument is supported by the fact that he lied to the estate and created a fraudulent billing statement when confronted with a request for an accounting of the personal injury settlement monies. If Mr. Barton's actions were truly negligent and not intentional, he had numerous opportunities to make amends. Instead, he used those instances to further lie and provide fraudulent accountings to cover his tracks while he continued to bill for his time involved in preparing such paperwork.

 The third factor to consider is the amount of the actual or potential harm caused by the misconduct. In addition to the amount of money that Ms. Pringle and/or her estate have been deprived of due to Mr. Barton's misconduct, it is apparent that, because of Mr. Barton's transgressions, the estate remained open as of the date of the underlying hearing. The process has caused the heirs of the estate to experience both financial and emotional hardship. Mr. Barton attempts to argue that his settlement of the civil legal malpractice lawsuit with the estate negates his conduct and is a defense. However, that action is separate and distinct from the ethics complaint and only occurred after the institution of both an ethics complaint and a civil lawsuit. Significantly, Mr. Barton has not honored the terms of the settlement reached in the civil legal malpractice suit; thus, this Court does not find that

the civil settlement alleviated any of the ill effects caused by Mr. Barton's misconduct.[16] Moreover, we find no merit in Mr. Barton's argument that his failure to pay the Medicare lien was a result of extended negotiations with Medicare. While he expressed that he had applied for hardship waivers, there was no proof of any ongoing discussions. Further, Medicare represented to the estate that no such requests had been filed. Thus, the estate remains obligated for such payment, with an anticipated interest penalty to be imposed. Mr. Barton's deceit caused great harm both monetarily and emotionally to the persons associated with Ms. Pringle and her estate and has the potential to continue to cause harm due to the imposition of interest on the Medicare lien.

 Fourth, in further assessing the appropriate sanctions, we examine Mr. Barton's conduct in light of both mitigating and aggravating factors. "Mitigating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Syl. pt. 2, *Lawyer Disciplinary Bd. v. Scott*, 213 W.Va. 209, 579 S.E.2d 550 (2003). The *Scott* opinion, at Syllabus point 3, further explains that

> [m]itigating factors which may be considered in determining the appropriate sanction to be imposed against a lawyer for violating the Rules of Professional Conduct include: (1) absence of a prior disciplinary record; (2) absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith effort to make

16. Mr. Barton argues that the finding that he had made restitution only in the amount of $46,000 was in error, and he alleges that the restitution made was over $80,000. Even though the civil settlement between Mr. Barton and the estate was not a determinative factor before the Hearing Panel Subcommittee, Mr. Barton claims that the monies he paid toward the resolution of his civil lawsuit should have been credited in his favor since, even in default, he has paid the estate a far greater amount than that originally owed pursuant to the contingency fee agreement with Ms. Pringle for the settlement of her personal injury claim. Further, Mr. Barton explains that he provided payment during the settlement with the estate for both the Beltone bill and the Medicare lien. However, this argument over-

looks the fact that these payments were offered only after the ethics complaint had been filed, after he had already converted the personal injury settlement monies to his own use and exhausted his IOLTA account to the point of maintaining a negative balance, and after the imposition of a civil lawsuit against him by the estate. We have previously recognized that for restitution to be accepted as a mitigating factor, it must be made promptly. *See Lawyer Disciplinary Bd. v. Kupec*, 202 W.Va. 556, 570, 505 S.E.2d 619, 633 (1998). Moreover, there is no dispute that Mr. Barton continues to owe money to the estate pursuant to the settlement agreement entered in the estate civil action. Mr. Barton has been in breach of the settlement agreement in that regard since August 2008.

restitution or to rectify consequences of misconduct; (5) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (6) inexperience in the practice of law; (7) character or reputation; (8) physical or mental disability or impairment; (9) delay in disciplinary proceedings; (10) interim rehabilitation; (11) imposition of other penalties or sanctions; (12) remorse; and (13) remoteness of prior offenses.

213 W.Va. 209, 579 S.E.2d 550. By contrast, "[a]ggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed." Syl. pt. 4, *Scott, id.*

Based on the evidence before the Hearing Panel Subcommittee, several aggravating factors were found, including a dishonest or selfish motive, pattern of misconduct, multiple offenses, refusal to acknowledge wrongdoing, the vulnerability of an elderly woman victim, and failure to honor settlement agreements in civil litigation stemming from the same conduct, as well as the failure to honor his agreement governing restitution. The only mitigating factor found was the lack of a prior disciplinary record.

 The lack of mitigating factors and the presence of substantial aggravating factors lead to the conclusion that the recommendations submitted by the Hearing Panel Subcommittee are appropriate. In fashioning the sanction, this Court is mindful of its prior holding that,

" '[i]n deciding on the appropriate disciplinary action for ethical violations, this Court must consider not only what steps would appropriately punish the respondent attorney, but also whether the discipline imposed is adequate to serve as an effective deterrent to other members of the Bar and at the same time restore public confidence in the ethical standards of the legal profession.' Syllabus Point 3, *Committee on Legal Ethics v. Walker,* 178 W.Va. 150, 358 S.E.2d 234 (1987)." Syl. Pt. 5, *Committee on Legal Ethics v. Roark,* 181 W.Va. 260, 382 S.E.2d 313 (1989).

Syl. pt. 7, *Jordan,* 204 W.Va. 495, 513 S.E.2d 722. "This Court, like most courts, proceeds from the general rule, that absent compelling extenuating circumstances, misappropriation or conversion by a lawyer of funds entrusted to his/her care warrants disbarment." *Jordan,* 204 W.Va. at 499, 513 S.E.2d at 726 (citing *Lawyer Disciplinary Bd. v. Kupec,* 202 W.Va. 556, 561, 505 S.E.2d 619, 631 (1998)); *see also Lawyer Disciplinary Bd. v. Brown,* 223 W.Va. 554, 678 S.E.2d 60 (2009) (per curiam). Based on the severity of Mr. Barton's misconduct, as well as the financial and emotional impact his actions have had on his client, his client's estate, and the public, the only adequate discipline that would serve the public policy interests is annulment of Mr. Barton's law license.

## IV.

### CONCLUSION

For the foregoing reasons, we adopt the sanction recommendations set forth by the Hearing Panel Subcommittee as follows:

1. That [Mr. Barton's] law license be annulled;

2. That [Mr. Barton] must make full restitution to the Estate of Freeda Pringle in the amount of $31,183.39,[17] plus restitution for any interest payments assessed by Medicare against the Estate of Freeda Pringle as a result of the unpaid Medicare lien;

3. That, prior to petitioning for reinstatement of his license to practice law, [Mr. Barton] must provide evidence of payment in full of the amount of restitution set forth in paragraph 2, infra.

4. That, prior to petitioning for reinstatement, [Mr. Barton] must pay the costs of these proceedings pursuant to Rule 3.15 of the Rules of Lawyer Disciplinary Procedure;

5. That, upon successful petition for reinstatement, [Mr. Barton] must undergo supervised practice for a period of two (2) years; and

6. That, upon successful petition for reinstatement, [Mr. Barton] shall hire a cer-

17. See *supra* note 13.

tified public accountant who shall audit the office accounting records of [Mr. Barton] for a period of two years and supply reports to ODC on a quarterly basis.

(Original footnote omitted; new footnote added). While this Court fully adopts the recommendations set forth by the Hearing Panel Subcommittee, we also exercise our inherent authority to determine the appropriate sanctions in lawyer disciplinary cases and impose two additional sanctions: (1) Mr. Barton must make full restitution to the Estate of Freeda Pringle by honoring the settlement terms of the action filed on behalf of the estate against Mr. Barton, Kanawha County Civil Action No. 06–C–1472, and (2) that, prior to petitioning for reinstatement of his license to practice law, Mr. Barton must provide evidence of payment in full of the required restitution due pursuant to the settlement terms of the action filed on behalf of the Estate of Ms. Pringle against Mr. Barton in the Circuit Court of Kanawha County, Civil Case No. 06–C–1472.

License to practice law in West Virginia annulled.